## STRANGE v. BOARD OF COMMISSIONERS OF THE COUNTY OF GRANT.

[No. 21,446.   Filed March 16, 1910.]

1. CONSTITUTIONAL LAW.—*Highways.*— *Taxation.*— *Eminent Domain.*—Statutes authorizing the improvement of highways are an exercise of the power of taxation, and not that of eminent domain, and therefore there is no taking of property without compensation. p. 643.

2. CONSTITUTIONAL LAW.—*Due Process.*— *Highways.*— *Notice.*— *Damages.*—Sections 7712, 7718 Burns 1908, Acts 1907, p. 137, Acts 1905, p. 521, §69, providing for notice of a highway proceeding, and for an assessment of damages, constitute such an opportunity for hearing as is required by the due process of law provision of the 14th amendment to the federal Constitution. p. 643.

3. HIGHWAYS.—*Control.*—Highways are under the ownership and control, direct or indirect, of the State. pp. 644, 649, 656.

4. CONSTITUTIONAL LAW.—*Classification of Cities.*—The legislature has the constitutional right to classify cities by population, in providing for their government, but the classification must not be whimsical nor arbitrary, but must inhere in the subject-matter. pp. 644, 656.

5. CONSTITUTIONAL LAW.—*Public Improvements.*—*Taxation for.*— The legislature in its discretion may provide for the payment for local improvements by taxation of a given district, or by local assessment. p. 645.

6. CONSTITUTIONAL LAW.—*Local or Special Laws.*—*Legislative Questions.*—A law which applies generally to a particular class of cases is not a local or a special law; and whether a statute should be made applicable to a large or small class is a legislative question. p. 645.

7. CONSTITUTIONAL LAW.— *Classification.*— *Highways.*— *Cities.*— Section 7712 Burns 1908, Acts 1907, p. 137, providing that "whenever a petition signed by fifty or more freeholders and voters of any township in any county in this State, includes [including] any incorporated town or city in such township having a population of less than thirty thousand inhabitants," praying for the improvement of any highway, is filed, the proper board of commissioners shall proceed with such case, is not invalid on the ground that it is class legislation. Monks and Jordan, JJ., dissent. p. 646.

8. CONSTITUTIONAL LAW.—*Privileges and Immunities.*—*Highways.* —Section 7712 Burns 1908, Acts 1907, p. 137, providing for highway improvement petitions in any township, including a town or

Strange *v.* Board, etc.—173 Ind. 640.

city of less than 30,000 inhabitants, is not class legislation as pro-
hibited by article 1, §23, of the state Constitution, nor an abridg-
ment of privileges or immunities of citizens of the United States
under §1 of the 14th amendment. Monks and Jordan, JJ., dis-
sent. p. 649.

9. WORDS AND PHRASES.—*"Privileges."*—*"Immunities."*—The words
"privileges" and "immunities" import general, abstract, personal,
fundamental rights. p. 649.

10. CONSTITUTIONAL LAW.—*Privileges and Immunities.*—The privi-
leges and immunities of citizens protected by the federal Consti-
tution are those arising from the federal Constitution or secured
by the federal government. p. 651.

11. CONSTITUTIONAL LAW.—*Equal Privileges.*—The rights of citi-
zens of other States while in a particular state, are measured by
the rights of the citizens of that State. p. 651.

12. HIGHWAYS.—*Meaning of.*—Roads and highways are generic
terms and include all kinds of public ways. p. 652.

13. HIGHWAYS.—*Streets.*—A street is a highway, but a highway is
not necessarily a street. p. 653.

14. HIGHWAYS.—*Streets.*—*What are.*—A street is a public highway
in an incorporated town or city. p. 653.

15. STATUTES.—*Construction.*—*"Highways."*— *Streets.*— The word
"highways," as used in §7712 Burns 1908, Acts 1907, p. 137, pro-
viding for petitions for the improvement of "highways" in any
township, including any town or city of less than 30,000 inhabit-
ants, includes streets in such towns or cities, and this is espe-
cially true where such streets are specifically mentioned in later
sections of such act. pp. 653, 654.

16. STATUTES.—*Reënactment of, after Judicial Construction.*—The
reënactment of a statute after it has been judicially construed,
impresses the new statute with such construction. p. 654.

17. STATUTES.—*Construction.*—*Highways.*— *Materials Used.*—Sec-
tion 7711 Burns 1908, Acts 1905, p. 521, §62, providing for the pav-
ing of certain highways, including streets, with "stone, gravel or
other road paving material," is not controlled by the act of 1909
(Acts 1909, p. 353), providing that the materials used in road con-
struction outside of cities and towns shall be of the ordinary kind,
and that street paving materials shall be used on streets, the in-
ference being that the use of materials was not restricted by the
former act. p. 654.

18. STATUTES.—*Construction.*—*Ejusdem Generis.*—The rule of *ejus-
dem generis* is not a rule of but an aid to interpretation. p. 655.

19. STATUTES.—*Construction.*—*Ejusdem Generis.*—*Application of.*—
Where the prior specific words of a statute exhaust the class or
classes to which they belong, the rule of *ejusdem generis* does
not apply. p. 655.

20.  HIGHWAYS.—*Paving Material.— Kinds.— Statutes.— Construction.*—Section 7712 Burns 1908, Acts 1905, p. 521, §62, providing that certain highways may be "paved with stone, gravel or other road paving material," does not exclude the use of all other materials besides stone and gravel.  p. 655.

21.  HIGHWAYS.—*Improvement.—Materials.—Discretion of Boards of Commissioners.*—Boards of commissioners have the discretionary right to order the construction of all highways less than three miles in length, except those upon which United States mail routes are located, and to select the material to be used (§7719 Burns 1908, Acts 1907, p. 68, §1).  p. 656.

22.  CONSTITUTIONAL LAW.—*Local and Special.—Highways.—Mail Routes.*—The legislature has the constitutional right to require the construction of highways over which rural mail routes are located, such classification being one that inheres in the subject-matter.  p. 656.

From Grant Superior Court; *Samuel E. Cook*, Special Judge.

Suit by Joshua Strange against the Board of Commissioners of the County of Grant.  From a judgment for defendant, plaintiff appeals.  *Affirmed.*

*G. A. Henry*, for appellant.

*O. L. Cline* and *Condo & Browne*, for appellee.

MYERS, J.—Complaint in the Grant Superior Court by appellant, a taxpayer and freeholder of the township, to enjoin the board of commissioners of that county from letting a contract to pave with brick a highway less than three miles in length, outside a city or town, under an election under section one of the highway act of 1907 (Acts 1907, p. 68, §7719 Burns 1908).  The complaint alleges the regularity of all the proceedings up to the time of the proposed letting of a contract, for paving the highway throughout its entire length "with vitrified paving brick, with stone curbing, the whole resting upon a sub-grade of gravel or crushed stone ten inches in thickness, and thoroughly rolled, and the surface when thus prepared to be finished with a top surface of two inches of sand, and said vitrified paving brick when laid upon the sub-grade to be filled with English Portland

cement grouting between all the bricks and joints of said pavement,'' at an estimated cost of $38,292.65, the distance being 5,870 feet and the width of the roadway 30 feet.

The basis of the complaint is that section sixty-three of the act of 1905 (Acts 1905, p. 521) as amended by the act of 1907 (Acts 1907, p. 137, §7712 Burns 1908) is unconstitutional (1) as authorizing the taking of the property of the individual without an opportunity to be heard and without due process of law; (2) on the ground that it discriminates between townships; (3) because the statute grants privileges and immunities to one class of persons to the exclusion of others; (4) because the statute is local.

It is also grounded upon the claim that the law, if constitutional, does not authorize the improvement of a highway by paving with artificial material or with brick. A demurrer was successfully interposed to the complaint, and that ruling is relied upon for a reversal of the judgment.

To the first point, it is sufficient to say that the proceeding is not under the power of eminent domain, but under the taxing power, and the point is fully covered in the case of *State, ex rel.,* v. *Board, etc.* (1908), 170 Ind. 595, where the authorities are collected to the point that this method of taxation is not obnoxious to the 14th amendment to the federal Constitution. That in such cases the notice which is given, and the opportunity of the taxpayer to be heard at the time the assessment of the property is made for taxation in the given taxing district, are sufficient as furnishing the notice required. *Harmon* v. *Gephart* (1910), *ante*, 391.

By the statutes (§§7712, 7718 Burns 1908, Acts 1907, p. 137, Acts 1905, p. 521, §69), provisions are made for notice of the highway proceeding and for the assessment of damages and an opportunity is given for hearing within the rule required to constitute due process of law. See *Bowlir* v. *Cochran* (1903), 161 Ind. 486; *Deane* v. *Indiana Macadam, etc., Co.* (1903), 161 Ind. 371; *Kuntz* v.

*Sumption* (1889), 117 Ind. 1, 2 L. R. A. 655; *Garvin* v. *Daussman* (1888), 114 Ind. 429, 5 Am. St. 637; *Campbell* v. *Dwiggins* (1882), 83 Ind. 473.

To the point that it is discriminative against townships having a population of more than 30,000, the question has been lately decided adversely to the claim of appellant in *Smith* v. *Board, etc.* (1910), *ante,* 364, but in view of the public importance of the question we here elaborate that proposition. Does the denial of the right to townships including cities or incorporated towns of 30,000 or more inhabitants to improve streets violate article 4, §22, of the Constitution, as to the enactment of local or special laws as to laying out highways, or levying taxes for their construction? Highways are arteries of the State, and are subject to its direct control, or to its control through designated agents. *State, ex rel.,* v. *Board, etc., supra; Cones* v. *Board, etc.* (1894), 137 Ind. 404, and cases cited. That the legislature may control the construction and repair of streets in cities, is well established. *Lowe* v. *Board, etc.* (1901), 156 Ind. 163; *Gascho* v. *Sohl* (1900), 155 Ind. 417; *Sauntman* v. *Maxwell* (1900), 154 Ind. 114. Whether in city, town or rural districts, such roads and streets are state highways, and it was evidently this fact which induced the enactment of the constitutional inhibition against special laws as to their laying out and construction, and requiring uniformity throughout the State, not as to the amounts to be levied in the several political subdivisions, but as to the procedure, and the manner of determining and fixing the character and extent of the improvement, and the taxing district. It is purely a question of the taxing power.

It is urged (1) that there is no good reason inherent in the subject-matter, or naturally growing out of it for such classification, and (2) that there can especially be no good ground for classifying townships including a city or incorporated town having a population of

less than 30,000 differently from one having a population of 30,000. If there is reason for the classification, then, in the very nature of the case, the existence of the power implies the right to fix it at some place, or at some number, or at some population, and, as applied to cities for certain purposes, the right is admittedly given to fix it at a definite population. *Bumb* v. *City of Evansville* (1907), 168 Ind. 272; *School City of Rushville* v. *Hayes* (1904), 162 Ind. 193, 200; *Evansville, etc., R. Co.* v. *City of Terre Haute* (1903), 161 Ind. 26; *Campbell* v. *City of Indianapolis* (1900), 155 Ind. 186; *City of Indianapolis* v. *Navin* (1898), 151 Ind. 139, 41 L. R. A. 337. As to working in mines, we have recognized it as properly based upon the number employed. *Chandler Coal Co.* v. *Sams* (1908), 170 Ind. 623.

The classification must not be arbitrary or whimsical. It must be based upon reasons which naturally inhere in the subject-matter—real distinctions. "It is settled however, as a general rule, that it is within the discretion of the legislature to determine what property, as regards its location with respect to the local improvement, shall be assessed." *Spaulding* v. *Mott* (1906), 167 Ind. 67.

Whether it is by local assessment, or by taxation of all the property in a given district, it is done under the taxing power, and the tax may be laid on all the property in the district, or by local assessment against the real estate benefited. In either case it is a state function, as to a matter over which the State has supreme control, except as limited by the Constitution. *State, ex rel.,* v. *Board, etc., supra.*

A law which applies generally to a particular class of cases is not a local or special law. *Consumers Gas Trust Co.* v. *Harless* (1892), 131 Ind. 446-452, 15 L. R. A. 505. Whether the statute is applicable to a large or a small class, is a purely legislative question. *Board, etc.* v. *Johnson* (1909), 173 Ind. 76.

It is urged that to hold the act valid is to make such classification that townships including within them incorpo-

rated towns or cities of less than 30,000 population
7. may build highways within such cities or towns, and
that townships in which are cities or incorporated
towns exceeding 30,000 population may not build highways
in such cities or incorporated towns. That is true, but we
see no difficulty from that fact. All coming within the class
are treated alike. There is no more reason inherent in the
subject-matter, or naturally pertaining to the subject, that
a particular district in a city should be assessed for the con-
struction of a street, by local assessment, rather than the
entire property within the municipality, than there is that
the citizens of a township, outside a city of a given popula-
tion, should construct highways outside the city, or that the
citizens within the municipality should construct the streets
therein by local assessments or general taxation, and the
rural citizens construct highways outside the cities by like
methods; or that citizens of one township, or of a city or
incorporated town, should be taxed generally to maintain
free gravel roads outside the limits of either, or that a dis-
trict of a certain population, partly rural and partly city,
should not equally contribute to an improvement strongly
conducive to the common interest. In its last analysis, it
demonstrates the proposition that it is a purely legislative
question in fixing the taxing district, in either case. Some
additional reasons, which justify such classification as the
act under consideration establishes, are the following: As
between the smaller town or city and the rural community,
it is a relative question. The inhabitants of a town or city
and of the rural community mutually have a greater depend-
ence upon good highways than the larger city, owing to
better communication or facilities by other public conven-
iences of travel, in or to the latter, and the larger city ordi-
narily requires a better, or more expensive, and more perma-
nent street, owing to the character and increased travel, than
the smaller community; but it would be inequitable to assess
the property of the larger city for the construction of coun-

try highways for which its citizens have comparatively little use, and, conversely, to assess the rural citizens for the construction of streets much more costly than any use which they could put them to would require. The larger city might not receive an adequate return for the drafts made upon it by the exactions which would be required in taxes for constructing rural ways. Again, there may be the difference in wealth and values between the larger community and the smaller, a very real difference, for authorizing the larger to make its improvements more costly or ornate than the requirements of the smaller. These reasons, and doubtless others, may have been in the minds of the legislators, as real differences in local requirements.

Classification of cities for the purpose of street improvements according to population has been held not obnoxious to a constitution prohibiting special acts conferring corporate powers, and requiring all general laws to have a uniform operation. *Parker-Washington Co.* v. *City of Kansas City* (1906), 73 Kan. 722, 85 Pac. 781. A classification of counties by population for public improvements was held valid in the case of *Bingham* v. *Board, etc.* (1906), 127 Wis. 344, 106 N. W. 1071. A classification of cities exceeding 50,000 inhabitants for the purpose of regulating the calling of barbers, has been held proper. *Ex parte Lucas* (1901), 160 Mo. 218, 61 S. W. 218.

Improvements can only be made in cities and incorporated towns with the consent of the council or board of trustees, and if they are made under the act, their control, maintenance and repair are left to the city or town. §7721 Burns 1908, Acts 1905, p. 521, §72. And while under §7726 Burns 1908, Acts 1905, p. 521, §76, the original cost of construction is levied on the whole property in the township, §7754 Burns 1908, Acts 1905, p. 521, §85, providing for control of all roads by the county commissioners, plainly is to be read with §7721, *supra,* giving cities and towns control over the highways within their boundaries, and the control of the

outside highways is given to the commissioners. The tax for keeping them in repair is levied on all the property of the township, but the cost of the repair in the cities or towns is paid from the fund, thus making it as nearly equitable as is practicable in most systems of taxation. §7759 Burns 1908, Acts, 1907, p. 613, §2.

There can be no more reason for denying to cities of less than 30,000 population the right of a like form of government with those exceeding 30,000 population, than there is of denying to cities of more than 30,000 population the right to construct streets in like manner as cities and incorporated towns of less than 30,000 population, unless it can be said that classification by population may be made for some purposes and not for others. For when we come to classification based wholly upon population, it embraces the very subject of taxation, such, for example, as taxation for library purposes, for teachers' and firemen's pension funds, for park purposes, and manual training schools, and unless we can say that there can be no reason for classification inhering in differences of population as affected by different needs, or as affecting or applied to the construction of roads, we are bound to assume that there is such reason. State v. Barrett (1909), 172 Ind. 169.

There can be no real difference in applying the rule of population to the wider area or taxing district, and embracing both urban and rural property. Denying to cities in excess of 30,000 population the right to build streets under this act, takes nothing away from them which they previously possessed, but simply denies to them rights and powers which are exercised by smaller cities or taxing districts, with respect to their taxing powers, for when we come to cities, for purposes which do not obtain in so large a degree to their domestic concerns as those of the larger district, the smaller city is denied the right and power conferred on the larger, so that after all it gets back to the question of the objects of the legislation rather than the mere matter of

population, which latter is doubtless fixed upon as marking the proper line of separation as being as nearly just as any which can be fixed.

If city property can be taxed to purchase free gravel roads or to keep them in repair, as is held in the case of *Byram* v. *Board, etc.* (1896), 145 Ind. 240, 33 L. R. A. 476, and this is not local or discriminative, it would be difficult to perceive how the failure to impose taxes on a city, or to empower it to impose taxes upon itself, or to enable others to impose taxes upon it for the purpose of constructing highways, can be obnoxious to the Constitution, especially when the powers of cities are derived from the legislature. The power to construct streets is a delegated one, and the State's control over highways, both urban and rural, is exclusive, both as to laying out and improving them, except as it delegates that control. The cities have preserved to them ample powers for the purpose of constructing streets or highways, and are not denied any powers they have theretofore exercised. It cannot arise from lack of representation, because the city is not taxed in such case. Even in case of taxation for repairs of free gravel roads in the rural districts, the rule finds support in the school laws under which the inhabitants of one county generally contribute to the schools of other counties, part of the fund raised by taxation of their property.

It is not a law granting privileges or immunities to one class of persons which, upon the same terms, are not open to all citizens as prohibited by article 1, §23, of the state Constitution, or an abridgement of the privileges and immunities of citizens of the United States under §1 of the 14th amendment to the federal Constitution.

The courts have not attempted to define the words "privileges or immunities" of either Constitution. They are regarded as general, abstract, personal rights; rights which are in their nature fundamental, and pertain to all citizens in free governments, and which they

are entitled to enjoy throughout the several states of the Union, as well as in the state of residence: such as freedom of travel, the pursuit of any lawful vocation or of pleasure, the enjoyment of life and liberty, the acquisition of property, the right to control it in security and peace, and the right of resort to the courts for its protection, without restrictions other than those usually affecting all persons. As we have shown, there may be classifications, and rights may be conferred upon some classes and not upon others. A familiar example is the conferring upon corporations and upon individuals, the right of eminent domain, and all that is required is that the privileges or rights conferred or liabilities imposed shall be the same to all who fall within the same class or are similarly situated, and that is an express recognition of the clause of our own Constitution. The doctrine is exemplified in the following cases: *Hoop* v. *Affleck* (1904), 162 Ind. 564; *Levy* v. *State* (1903), 161 Ind. 251; *Boomershine* v. *Uline* (1902), 159 Ind. 500; *Parks* v. *State* (1902), 159 Ind. 211, 59 L. R. A. 190; *Smith* v. *Indianapolis St. R. Co.* (1902), 158 Ind. 425; *Indianapolis Union R. Co.* v. *Houlihan* (1901), 157 Ind. 494, 54 L. R. A. 787; *Judy* v. *Thompson* (1901), 156 Ind. 533; *Barrett* v. *Millikan* (1901), 156 Ind. 510, 83 Am. St. 220; *Latshaw* v. *State, ex rel.* (1901), 156 Ind. 194; *Overshiner* v. *State* (1901), 156 Ind. 187, 51 L. R. A. 748, 83 Am. St. 187; *Ferner* v. *State* (1898), 151 Ind. 247; *State* v. *Gerhardt* (1896), 145 Ind. 439, 33 L. R. A. 313; *Cory* v. *Carter* (1874), 48 Ind. 327, 17 Am. Rep. 738; *Smith* v. *Moody* (1866), 26 Ind. 299; *Ward* v. *Maryland* (1870), 12 Wall. 418, 20 L. Ed. 449; *Paul* v. *Virginia* (1868), 8 Wall. 168, 19 L. Ed. 357; *Brittle* v. *People* (1873), 2 Neb. 198; *Lonas* v. *State* (1871), 59 Tenn. 287; *Bank of Augusta* v. *Earle* (1839), 13 Pet. \*519, 10 L. Ed. 274; *Corfield* v. *Coryell* (1823), Fed. Cas. No. 3,230; *Field* v. *Barber Asphalt Pav. Co.* (1904), 194 U. S. 618, 24 Sup. Ct. 784, 48 L. Ed. 1142; *Farmers, etc., Ins. Co.* v. *Dobney* (1903), 189 U. S. 301, 23 Sup. Ct. 565, 47 L. Ed. 82; *Cumming* v. *Richmond County*

*Board, etc.* (1899), 175 U. S. 528, 20 Sup. Ct. 197, 44 L. Ed. 262; *Civil Rights Cases* (1883), 109 U. S. 3, 24, 3 Sup. Ct. 18, 27 L. Ed. 835.

"The privileges and immunities of citizens of the United States, protected by the 14th amendment, are privileges and immunities arising out of the nature and essential character of the federal government, and granted or secured by the Constitution." *Duncan* v. *Missouri* (1894), 152 U. S. 377, 14 Sup. Ct. 570, 38 L. Ed. 485. See, also, *Slaughter House Cases* (1872), 16 Wall. 36, 21 L. Ed. 394.

The provisions of article 4, §2, of the federal Constitution, that citizens of each state shall be entitled to the privileges and immunities of citizens of the several states, are held to be synonymous with the rights of the citizens. *Corfield* v. *Coryell, supra.*

This section is akin to the provision of §1 of the 14th amendment, as respects privileges and immunities, but the former is held not to make the privileges and immunities (the rights) enjoyed by citizens of the several states, the measure of the privileges and immunities (the rights) to be enjoyed as of right by a citizen of another state under its constitution and laws. *McKane* v. *Durston* (1894), 153 U. S. 684, 14 Sup. Ct. 913, 38 L. Ed. 867. This rule necessarily classifies citizens in their rights, to the extent that a citizen of one state when in another state must be governed by the same rules which apply to the citizens of that state, as to matters which are of the domestic concern of the state. *Cole* v. *Cunningham* (1890), 133 U. S. 107, 10 Sup. Ct. 269, 33 L. Ed. 538; *People, ex rel.,* v. *Gallagher* (1883), 93 N. Y. 438, 45 Am. Rep. 232; *Butchers Union, etc., Co.* v. *Crescent City, etc., Co.* (1884), 111 U. S. 746, 4 Sup. Ct. 652, 28 L. Ed. 585; *Ex parte Kinney* (1879), Fed. Cas. No. 7,825; *Douglass* v. *Stephens* (1821), 1 Del. Ch. 465. Our own Constitution does practically the same thing among its own citizens, for

the privileges and immunities, protected under it are those arising under, or granted or secured by it. But by its express provisions they are the privileges or immunities which, upon the same terms, shall be common or equal to all; that is, to all under like conditions. The act is not objectionable to either Constitution upon either of the grounds relied on.

The final question for determination is as to whether country roads can be paved with brick as is contemplated by this proceeding. On one hand it is contended that in interpreting §§7711, 7712 Burns 1908, Acts 1905, p. 521, §62, Acts 1907, p. 137, the language "paved" or "paving" "with stone, gravel or other road paving material," the rule of *ejusdem generis* must be applied, and that "other road paving material" means material of a similar kind to stone or gravel. On the other hand, it is contended that there being no allegation that "vitrified paving brick" is not in a class with stone or gravel, the court cannot take judicial notice of such fact, if it be a fact, and that paving brick is a substitute for stone block, and that it is in a class with stone, as an artificial substitute, and recognized road paving material, and a like road paving material with stone. The proper interpretation must be determined upon many considerations within and without the act itself.

Roads and highways are generic terms, embracing all kinds of public ways, such as county and township roads, streets, alleys, township and plank roads, turnpike or gravel roads, tramways, ferries, canals, navigable rivers, including also railroads. *Southern Kan. R. Co.* v. *Oklahoma City* (1902), 12 Okla. 82, 69 Pac. 1050; *Union Pac. Railroad* v. *Commissioners, etc.* (1876), 4 Neb. 450; *Washington County* v. *Williams* (1901), 111 Fed. 801, 49 C. C. A. 621; *Mobile, etc., R. Co.* v. *Davis* (1889), 130 Ill. 146, 22 N. E. 850; *Evansville, etc., R. Co.* v. *City of Evansville* (1860), 15 Ind. 395; Elliott, Roads and Sts. (2d ed.), §§1, 7, 19.

A street is a highway, but a highway is not necessarily a street. *Tucker* v. *Conrad* (1885), 103 Ind. 349; *Common Council, etc.,* v. *Croas* (1855), 7 Ind. 9; Elliott, Roads and Sts. (2d ed), §§7, 19.

A street is a public highway in an incorporated town or city. *City of Indianapolis* v. *Higgins* (1894), 146 Ind. 1; *State* v. *Mathis* (1863), 21 Ind. 277; *Conner* v. *President, etc.* (1819), 1 Blackf. *43; *Horner* v. *State* (1878), 49 Md. 277.

In the case of *Mobile, etc., R. Co.* v. *Davis, supra,* it is held that a street is a highway, under a statute requiring signals by operatives of railroad trains at "any public highway." In the case of *Tracy* v. *Troy, etc., R. Co.* (1868), 38 N. Y. 433, 98 Am. Dec. 54, it was held, that a statute requiring railroads to maintain cattle-guards at road crossings applied as well to streets in villages as to country highways, following the case of *Brace* v. *New York Cent. R. Co.* (1863), 27 N. Y. 269.

In the acts of 1899 (Acts 1899, p. 164), we find in amended section two a distinct recognition of roads to be improved "in the corporate limits of or extend through any city or incorporated town," and that consent of the city or town authorities must be obtained, and that the town or city "shall take charge of that part of said road, and maintain the same."

In the independent act of 1901 (Acts 1901, p. 449, §6899 *et seq.* Burns 1901) we find in section two the foregoing provision substantially retained.

Coming to the statute under consideration, we find the generic terms, "highway" and "road," used evidently for the purpose of including streets, and enabling cities and incorporated towns to be included in an improvement. This statute was enacted after a construction had been put upon the act of 1893 (Acts 1893, p. 196) as amended in 1895 (Acts 1895, p. 143), in *Lowe* v. *Board, etc.*

(1901), 156 Ind. 163, authorizing the construction of highways in cities and incorporated towns. But by the act of 1905 (Acts 1905, p. 521, §72, §7721 Burns 1908) it is specifically provided that "no street in any incorporated town or city shall be improved under the provisions of this act without the consent of the trustees of said town or the common council of such city," and that "after any street shall have been improved hereunder, the trustees of such town or the common council of such city shall have control of the same and maintain the same in repair." In §7759 Burns 1908, Acts 1907, p. 613, §2, provision is made for the application of a portion of the graved road tax to keeping up the repairs in cities or incorporated towns. These sections are a clear recognition of the legislative intent to authorize the improvement of city streets, as well as rural highways, and that too upon the theory of the mutual relation of the one to the other, and of the equalization of the taxes with the improvement. They also recognize the right of the city or town to control the improvement so far as their limits are concerned, and necessarily the right to dictate the character of the improvement within their limits.

It is urged that the provisions of the act of 1909 (Acts 1909, p. 353), charging the cost of the extra improvement in towns or cities to those corporations, and providing that the materials used in road construction outside of cities and towns shall be such as are usually employed in the construction of country roads, such as gravel and broken stone, in construction thereof, and street paving materials shall not be used except upon streets within the limits of cities and towns, indicate the legislative intent that such should be the construction of the act prior to that time. We do not so interpret the section. It does not purport to be a construing act, but an amending one, and we interpret it as a recognition of the right of prior unrestricted use of materials, and an intent to restrict the right thereafter.

It is next urged that the rule of *ejusdem generis* should be applied, and that the phrase "other road paving material" should be held to refer to the prior words "stone" or "gravel," and limit the material on country roads to stone, or gravel, or like material. The rule of *ejusdem generis* is not in and of itself a rule of interpretation, but an aid to interpretation when the intention is not otherwise apparent. Black, Interp. of Laws, pp. 143-145.

The rule of *ejusdem generis* does not apply when the prior or specific words exhaust the class, for there is nothing of the remaining terms to qualify; and following the rule that all parts of a statute shall, if possible, be given effect, the general words are to be given effect if that can be done, and that the rule shall not be invoked to restrict the operation of the act within narrower limits than the legislature intended. *United States Cement Co.* v. *Cooper* (1909), 172 Ind. 599; Black, Interp. of Laws, pp. 145, 146; Sutherland, Stat. Constr., §§436, 437; Endlich, Interp. of Stat., §409.

Here the words "stone" and "gravel" entirely exhaust each class, and unless the remaining words mean something else, they can mean nothing, which will not be imputed to them, if avoidable, and we place our decision in this respect upon the ground that the phrase "other paving material" necessarily means something other than either stone or gravel, and that the legislature intended giving to the localities an opportunity to use such materials as were necessary or best suited to the end to be attained. The rule of *ejusdem generis*, that general words following a particular enumeration will not include things of a superior class, has no application where the rule would leave the general words without meaning or effect. Sutherland, Stat. Constr., §436. This construction gives effect to the whole statute, and is also in harmony with the theory of using such material as may be suited to the particular needs in

improving city or town streets, or country roads, with proper limitations upon unnecessary or excessive cost by those most concerned.

It will be noted that as to such improvements as can only be made when authorized by an election, there is no discretion lodged in the board of commissioners as to making the improvement, the propriety of making the improvement is left to the voters, and that is a matter that may safely be left to them. §7720 Burns 1908, Acts 1905, p. 521, §71. As to improvements three miles or less in length, the commissioners are clothed with a discretion as to whether they shall be constructed—except where there is a United States mail route on the way, or part of it—and in that discretion is necessarily involved the question of the materials. §7719 Burns 1908, Acts 1907, p. 68, §1.

Bearing in mind that public highways are the State's highways, and that the State may improve, or cause them to be improved as it sees fit, the mandatory duty of improving ways over which there are mail routes is a matter of purely legislative concern. *Lowe* v. *Board, etc., supra.*

It cannot be doubted that the State is unrestricted, in determining what roads shall be improved, and how, by the constitutional prohibition against local or special laws in laying out or repairing highways which are mail routes, for the reason that the law is not local, but applies the same in every part of the State, and not only to those highways which are now, but such as may hereafter become, mail routes, and is not special; for the reason that it applies to every mail route. The classification of mail routes by themselves is a natural one. They subserve the public purpose in the facilities for communication among the people by the use of the mails, and public means of disseminating intelligence, such as market prices, reports of the weather bureau, etc., and it is a matter of common information, that the federal government requires,

as a condition of establishing or continuing a rural mail route, that the highway shall be reasonably adapted to facilitate travel.

The court did not err in sustaining the demurrer to the complaint, and the judgment is affirmed.

## DISSENTING OPINION.

Jordan and Monks, JJ., dissent from so much of the prevailing opinion as holds that the statute in controversy is not in violation of article 4, §22, of the Constitution of this State, which forbids the passage by the legislature of a local or special law "for the laying out, opening, and working on, highways," for the reasons stated in the dissenting opinion in the case of *Smith* v. *Board, etc.* (1910), *ante*, 364.