## DIPERT ET AL. *v.* BACON.

[No. 24,295. Filed October 6, 1925.]

1. HIGHWAYS.—*Viewers have no power to prescribe kinds of implements to be used in preparing surface for paving.*—The statute providing for the improvement of highways on petition of fifty voters of any township (§8380 *et seq.* Burns 1926, §7711a *et seq.* Burns' Supp. 1921, Acts 1905 p. 521, as amended Acts 1915 p. 680) confers on the viewers no authority to prescribe the kinds of implements that shall be used in grading the road and preparing it for paving. p. 496.

2. HIGHWAYS.—*Use of lighter road roller than specified in specifications and contract would not prevent acceptance of improved road.*—Where a road improvement complied with the plans, profile and contract under which the job of constructing it was let, the mere fact that a road roller weighing one ton, by

direction of the engineer, was used instead of one weighing six tons, as was specified in the specifications and contract, would not deprive the county commissioners of the power to accept the road.  p. 496.

3.  HIGHWAYS.—*Petitioners for improvement not allowed to defeat acceptance of road for using unwashed gravel where they made no objections until road was completed.*—Petitioners for the improvement of a highway who "stood by" without objection until the completion of the improvement exactly as authorized by one clause of the specifications and of the contract, by using gravel like the sample submitted to and approved by the county commissioners, will not be allowed to defeat the acceptance of the road merely because of contractor's failure to use "washed" gravel as one clause of the specifications prescribed.  p. 496.

4.  HIGHWAYS.—*Amendments of petition and viewers' report authorized by statute.*—Section 79 of the highway law of 1905 (§8395 Burns 1926, §7730 Burns 1914, Acts 1905 p. 521) expressly authorizes the board of commissioners to permit the petitioners to amend their petition and the viewers to amend their report.  p. 496.

5.  HIGHWAYS.—*Board of commissioners has wide discretion as to materials to be used in improvement of highways under "Three Mile Road Law."*—The board of commissioners has a wide discretion as to the materials with which a highway is to be improved under the "Three Mile Road Law" (§8388 Burns 1926, §7719 Burns 1914).  p. 496.

6.  HIGHWAYS.—*Board of commissioners and engineer not wholly without discretion as to slight departures from specifications for road improvement.*—The board of commissioners and the engineer as its agent are not wholly without discretion in the matter of slight departures from the letter of the specifications for the improvement of a highway.  p. 497.

7.  HIGHWAYS.—*Board of commissioners has power, on supplemental petition, to amend slight errors in highway proceedings.*—Upon a supplemental petition, a board of commissioners has power to amend slight errors in highway proceedings leading up to the execution of the contract for a highway improvement so as to make the record recite the actual determination and order of the board.  p. 497.

8.  HIGHWAYS.—*Irregularities of procedure in improvement of highway must be objected to before contract let.*—Slight departures from the procedure provided for the improvement of highways or abuse of discretion in determining what materials shall be used in making the improvement, should be objected to before the contract is let, that the irregularities may be corrected.  p. 497.

From Starke Circuit Court; *W. C. Pentecost,* Judge.

Highway improvement proceeding, in which S. D. Dipert and another petitioner filed objections to the acceptance of the work. On appeal to the circuit court, the decision was in favor of the contractor, Lloyd Bacon, and the objectors appealed. *Affirmed.*

*William J. Reed,* for appellants.

*Charles H. Peters* and *Oscar B. Smith,* for appellee.

EWBANK, J.—Appellants and fifty other persons filed with the board of commissioners of Starke county a petition asking that two short stretches of highway in Oregon township, aggregating a little more than two miles in length, connecting in a "T" shape, should be "properly graded to furnish adequate drainage" and then "improved with gravel, with a road bed of not less than 8 feet wide and 8 inches in depth." And with the petition they filed an affidavit of one of such petitioners stating that they were all freeholders and voters of said township. After proof of notice and posting, viewers were appointed, and they, with the engineer, filed a report finding that the proposed improvement would be of public utility, together with a profile and plans, with specifications providing (among other things) that "the roadway shall be evenly graded on top of said grade to the uniform width of 22 feet in all cuts and 22 feet in all fills, with a slope from the center to the side thereof of not less than 12 feet horizontal for each one foot vertical. * * * Before the paving is done the roadway shall be properly graded as shown by the profile and then rolled with at least a six ton roller * * * working toward the center in order to preserve the crown thereof. The rolling shall continue until the surface has become smooth and firm. * * * The material to be used in surfacing this road shall be washed gravel as herein recommended by the viewers.

Each bidder shall submit a sample of the gravel he proposes to use with the board of commissioners, properly labeled, and the same shall remain in the custody of the county auditor until the final completion and acceptance of the work, and the party to whom the contract is let shall not use material inferior in quality to the sample so submitted by him. The gravel to be 8 feet wide * * * and 8 inches deep the entire length of the road." Upon receiving this report, the board of commissioners entered an order that the proposed improvement was practicable and of public utility and not more than three miles in length, that the report be and thereby was approved and confirmed, "and that said improvement be and the same is hereby established and ordered constructed according to the plans, profile and specifications herein set out." Afterward, in conformity with an extension of time granted them for that purpose, the viewers and engineer filed a supplemental report certifying that there were no damages or claims for damages, and upon an order of the board of commissioners for notice to contractors that sealed proposals would be received, the auditor published such a notice. It stated that the board "will receive sealed proposals for the improvement of certain highways in said county by grading, draining and paving with gravel as set out in the specifications, plans and profile now on file," etc. Appellee submitted a bid of $475 for grading and $2.80 per cubic yard for graveling the highway, in the total amount of $7,276.20, together with a sample of gravel from "May's pit" as the gravel he proposed to use. This gravel was not washed or screened, and contained approximately forty per cent. of "filler," consisting of sand and clay, mixed with sixty per cent. of small stones; this bid was much lower than any of the others, some of which were for "pit run gravel," others for screened gravel, and still others for washed gravel, one

bidder submitting four bids at different prices on as many samples; the bid of appellee was accepted and approved by the board of commissioners, who thereupon entered into a contract in writing with appellee by which he agreed with them "to construct said road * * * in accordance with said plans, profile and specifications made and adopted for such purpose and now on file in the office of the auditor * * * which are made a part of this contract by reference thereto * * * gravel to be of a kind and quality as per sample submitted by second party (appellee) and approved by first party (the board), which said sample is on file and labeled * * * all work to be done and performed under the direction of the engineer and superintendent of construction in charge of said work, and to the approval and acceptance of said first party."

Thereupon the contractor did construct the grade of the highway to the height, width and slope as provided in the specifications, and did roll it; nor is there anything in the pleadings or findings to indicate that he failed to roll it "smooth and firm," or failed to make a proper crown in the center of the road; but he did not use a six-ton roller, using only a roller that weighed one ton; the engineer told him not to use the six-ton roller because some of the soil over which the road was to be constructed was sand and some was muck (as the court finds it really was), and the engineer thought it would not be practicable to roll the grade with a six ton roller on that account; and with full knowledge of the manner in which the rolling was done, he accepted the grade as prepared, and approved it before any gravel was placed thereon, and approved the graveling thereof by the contractor; in the construction of the improvement, appellee, as contractor, carried out the instructions of the engineer and of the superintendent relative to grading and graveling the

road; he covered the road to the depth of eight inches or more and the width of eight feet with gravel from May's pit, substantially of the same kind and character as the sample he had submitted; the engineer and superintendent, respectively, made a sworn statement to the board of commissioners that the road had been completed according to the plans, plat, profile and contract of the quantity and quality of materials required by the contract, and reported the same for final acceptance, while appellee filed a proper affidavit that the remainder of the contract price was due him. And, while the work was in the course of being constructed, one of the two men now opposing its acceptance (appellant Porter Jack), a resident citizen and taxpayer of the township, went over the highway with the contractor, but did not object to its construction by the use of such gravel until after the engineer and superintendent had filed their report that it was completed, as aforesaid. Appellants and others then filed written objections to the acceptance of the work for the alleged reasons (among others) that the grade was not rolled with a six-ton roller, and that the gravel used was not the kind called for by the specifications. Some additional work having been done by the contractor to meet the other objections thus made, all of the objectors dismissed and withdrew their objections except the two appellants. The contractor filed an answer of denial and a plea alleging that the work had been completed and accepted by the engineer and superintendent, after which the board of commissioners made a finding that it had been so completed, and adjudged the costs against the objectors, from which they appealed to the circuit court. In that court, the contractor refiled his former answer, and, by leave of court, filed an additional paragraph setting out his contract, and alleging that pursuant thereto he constructed the improvement of the kind, quantity and

quality of material as therein stipulated and as shown by the sample submitted, and completed it in accordance with the contract; that all the work was done and all the materials were used in the presence and under the direction of the engineer and superintendent in charge, who approved and accepted it; and that the objectors resided in the township and knew the kind, quantity and quality of materials that were being used, and that a committee of the objectors, of which appellant Porter Jack was a member, went over the work and directed the contractor to place additional amounts of gravel of the kind used in building the road by way of completing the work to their satisfaction, which the contractor did in order to satisfy such objectors and avoid expensive litigation that was threatened against him. By reason of which facts, he alleged, the objectors were estopped to deny that the work had been completed according to contract.

The circuit court made a special finding of facts substantially as outlined above, on which it stated conclusions of law: (1) That the exceptors take nothing; (2) that the road be accepted as completed substantially according to the plans, specifications and contract; and (3) that the contractor recover the balance of the contract price; and (4) his costs, to each of which conclusions, the appellants excepted. Error is assigned upon each conclusion of law.

Counsel for appellant take the position: (a) That use of the specified implement, a six-ton roller, in accomplishing the stipulated result of making the surface of the grade smooth and firm, with a crown of an inch to the foot, was a material part of the specifications and contract; and (b) that since the viewers and engineer had recommended "washed" gravel, and had inserted in the specifications as set out in their report a stipulation that "the material to be used in surfacing

this road shall be washed gravel as herein recommended by the viewers," as well as the other provision that it should correspond with a sample to be furnished, the contractor cannot recover for a roadway built of gravel from which the sand and clay had not been removed by washing, even though it correspond with the sample submitted with his bid.

It will be observed that neither fraud, mistake nor imposition was alleged or found, and the question is simply whether or not the failure to use "a six ton roller" in preparing the grade at the very inception of the work, or failing to wash the thousands of loads (2,429 yards) of gravel before putting it on the road, was such a deviation from the terms of the contract that the contractor cannot recover compensation without removing the gravel, washing it, smoothing the grade with a six ton roller, and replacing the gravel after the sand and clay shall have been removed, although he used the gravel specified in the body of his contract and the roller which the engineer directed him to use, and built a road with which the engineer, superintendent and board of commissioners were satisfied. The statute by authority of which the improvement was petitioned for, ordered and constructed, provides (in part) as follows: "The boards of commissioners of the several counties of the state of Indiana are hereby authorized and empowered * * * to cause to be straightened, graded, drained and improved in like manner (i. e. with stone, gravel, brick or other road paving material) any public highway or highways * * * in the manner and upon the conditions herein prescribed." §8380 Burns 1926, §7711a Burns' Supp. 1921, §1, Acts 1915 p. 680. "Whenever a petition signed by fifty or more freeholders and voters of any township in any county in this state, praying that any public highway or highways within such township

\* \* \* shall be graded, drained or paved with stone, gravel or other road paving material, including brick, \* \* \* shall be addressed to the board of commissioners \* \* \* and filed in the office of the auditor of such county, it shall be the duty of such auditor to cause to be published \* \* \* and posted \* \* \* a notice setting forth the township in which the same is located, a description of the highway proposed to be improved, the term of court and the day upon which the same will be presented for hearing before the said board of commissioners." §8381 Burns 1926, §7712 Burns' Supp. 1921, §4, Acts 1915 p. 644. "The petition herein contemplated shall set forth \* \* \* the beginning and termination and a general description of each public highway sought to be graded, drained and paved, together with a recommendation of the width of each highway and of the character of improvement to be made. \* \* \*" §8382 Burns 1926, §7713 Burns 1914, §64, Acts 1905 p. 521. "\* \* \* If such petition shall be adjudged by the board to be in due form and sufficient \* \* \* such board of commissioners shall make an order \* \* \* referring the matter therein prayed for to a competent civil engineer and two viewers \* \* \*" §8384 Burns 1926, §7715 Burns 1914, §66, Acts 1905 p. 521. "\* \* \* they shall determine \* \* \* (d) the character of the improvement, including the grading, draining and paving \* \* \* together with complete plans and specifications of each such improvement and of all bridges, culverts and waterways required therein \* \* \* and shall file in the office of said auditor their report in writing, signed by each of them, setting forth their determination in said matter in respect to each highway \* \* \* including an accurate description \* \* \* of each public highway to be graded, drained and paved, together with their recommendations in respect

to the paving materials to be used in each instance, and complete plans and specifications for each improvement to be made, and the estimated cost * * * accompanied by an accurate profile. * * *" §8386 Burns 1926, §7717 Burns 1914, §68, Acts 1905 p. 521. "* * * If any petition * * * calls for the building or improvement of a road three miles or less in length connecting at each end with an improved free gravel or macadamized road within said township * * * the board of commissioners may, in their discretion, * * * establish and order the construction of said road without submitting the question of building the same to an election * * * *Provided, further,* that any taxpayer of the county, aggrieved by the action of said board, may appeal from its decision to the circuit court of said county within 10 days in the same manner as other appeals are taken from the action of such board, and said cause shall be tried *de novo.*" §8388 Burns 1926, §7719 Burns' Supp. 1921, §3, Acts 1915 p. 644. "When such highway or part of highway shall have been ordered * * * graded, drained and paved, as herein provided, it shall be the duty of the board of commissioners to make an order * * * * to give notice by publication * * * that on a day named * * * sealed proposals will be received by said board for the making of said improvements in accordance with said profile and report and the plans and specifications therein set forth." §8392 Burns 1926, §7722 Burns 1914, §73, Acts 1905 p. 521. "On the day and at the time and place named in the notices the board shall convene in session and shall receive all sealed proposals tendered and shall open the same in the presence of the bidders and shall let the contract for the construction of such road to the lowest responsible bidder therefor, * * * *" §8393

Burns 1926, §7723 Burns 1914, §74, Acts 1905 p. 521. "Except as otherwise provided in this act, any person aggrieved by any decision of the board of commissioners of any county, in any proceeding in relation to highways may appeal therefrom within 30 days thereafter to the circuit court of such county by filing a bond. * * * Such appeal shall be tried *de novo,* and may be had as to any issue tried, or that might have been tried before the county board." §8607 Burns 1926, §7793 Burns 1914, §123, Acts 1905 p. 521. "The board of commissioners shall have power to permit amendments to be made to the petition of said freeholders or report of viewers and to extend the time to the viewers to make their report and to continue the hearing from time to time, so as to subserve the ends of justice. * * *" §8395 Burns 1926, §7730 Burns 1914, §79, Acts 1905 p. 521.

The statute further provides for the appointment of "a competent superintendent to supervise the construction of such road according to the plans, profiles and specifications filed by the engineer and viewers, on which the contract to construct such road or roads was let," and requires that he and the engineer shall each give a bond, on which each shall be liable to the township at the suit of any taxpayer for failure to cause the road to be constructed thereunder; that the superintendent and engineer shall each file a sworn statement "that such road or roads have been completed according to the plans, plats, profiles and contract under which such improvement was let, and that the quantity and quality of material used in making the improvement was the kind of material and that the quantity was used as required in the contract." And on verified objections by a taxpayer, and an appeal to the circuit court, that the matter of accepting the work as completed shall be tried *de novo* in that court. §§8395, 8407 Burns

1926, §§7730, 7733 Burns 1914, §§79, 82, Acts 1905 p. 521.

We find nothing in these statutes which gives the viewers authority to prescribe in the specifications what implements shall be used in grading the road 1, 2. and preparing it for paving, as distinguished from the result to be attained of making the surface "smooth and firm," and so as to have a crown of eleven inches in the center. And since it is not denied that a proper result was achieved, the mere fact that a roller weighing one ton was used, by direction of the engineer, instead of one weighing six tons, was not a fact which deprived the commissioners of power to accept the road.

And where the petition asked only that the road, after grading, should be improved with "gravel" of a specified width and depth, and the viewers and engi-3-5. neer recommended that it be "washed gravel," and the specifications, while so providing, also stipulated that each bidder should submit a sample of the gravel he proposed to use, and should not use material inferior in quality to the sample submitted, and the bidder submitted a sample which was approved and adopted by the board of commissioners, and a contract was entered into which specified "gravel of a kind and quality as per sample submitted and approved," the mere fact that the gravel thereafter used was not "washed" does not necessarily prevail over a report by the engineer and superintendent and a finding by the court that gravel like the sample was used, and the improvement was completed substantially according to the contract. In the absence of allegation or proof on the subject we have no means of knowing that a proportion of "filler" consisting of sand and clay among the stones would diminish the quantity of stones in a yard of gravel, or would make the gravel less effective as a

pavement, or that gravel deposited on a base of sand or muck would not collect sand and dirt filling the spaces between the stones immediately upon being used as a roadway. And the contractor having complied with his contract exactly as authorized by one clause of the specifications and as written in the body of the contract, by using gravel like the sample submitted and approved, these petitioners who stood by without objection until the work was completed and until they had obtained a road at the expense of the contractor, will not be heard to deny the liability of the township on account of the mere technical reason that the contract ought to have been made to call for "washed" gravel, as another clause of the specifications did. The board of commissioners had express statutory authority "at any time" to permit the petitioners to amend their petition so as to ask for "pit run" gravel, and the viewers to amend their report so as to recommend and specify the same. §8395 Burns 1926, §7730 Burns 1914, *supra.* And the board had a wide discretion as to the materials with which a highway should be improved under the Three Mile Road Law. §8388 Burns 1926, §7719 Burns 1914, *supra; Strange* v. *Board, etc.* (1910), 173 Ind. 640, 656, 91 N. E. 242.

Appellants were petitioners for the improvement and parties to the action, and if there was an irregularity in letting the contract to appellee upon his sample of gravel, at some thousands of dollars less than the other bids, instead of insisting on "washed" gravel, steps should have been taken to correct it before appellee had incurred the expense of completing the highway, which the township will continue to possess and enjoy, whether he is paid or not. The board of commissioners and the engineer as its agent are not wholly without discretion in the matter

of slight departures from the letter of the specifications, where no fraud is shown, and where the result is not less good than strict compliance with the specifications would have produced. *Board, etc.,* v. *Newlin* (1892), 132 Ind. 27, 31 N. E. 465. And, upon a supplemental petition, it would have power to amend slight errors (if any) in the proceedings which led up to the execution of the contract, and thus to make the record recite the actual determination and order of such board. *Kent* v. *Cowdin* (1917), 187 Ind. 413, 118 N. E. 127. And parties who acquiesced in such slight departures from the regular course of proceeding as might have been amended if called to the attention of the board, and did not object thereto until the improvement had been completed, cannot defeat the payment of compensation for the work done because some part of the specifications differing from another part and from the stipulations in the body of the contract was not complied with. If the statutory power of the board of commissioners to permit amendments of the petition and the viewers report was not strictly pursued or was slightly overstepped, or the discretionary power of the board to determine from which of many sources of supply the gravel used should be taken was slightly exceeded (as to which we do not find it necessary to decide), it was done when appellee's bid was accepted and the contract with him for gravel like the sample he·submitted was entered into. If dissatisfied, the petitioners should have opposed the execution of the contract or its performance by the construction of the roadway with gravel like the sample, and should not have acquiesced until the contractor, complying with one of two slightly contradictory provisions of the specifications, at great expense, had fully performed the contract as it was written. The trial court did not err in its conclusions of law.

The judgment is affirmed.