Central Illinois Coal Mining Company, Appellant, v. The Illinois Power Company, Appellee.

Gen. No. 8,166.

Opinion filed January 25, 1928.

JOHNSON & PEFFERLE, for appellant.

WALTER McC. ALLEN, HENRY A. CONVERSE and WILLIAM L. PATTON, for appellee.

MR. JUSTICE ELDREDGE delivered the opinion of the court.

Appellant abided by its declaration to which a demurrer had been sustained in the court below, and a judgment was rendered *nil dicit*.

The declaration consists of a single count, which is lengthy, very redundant and inartificially drawn. It is alleged, in substance, therein, that the appellant operated a coal mine in Sangamon county and that on February 26, 1926, one Frank Ziegler was employed as hoisting engineer; that both appellant and Ziegler were, on that date, working under the Workmen's Compensation Act, Cahill's St. ch. 48, ¶ 201 *et seq.* of this State; that appellee was then operating high ten-

sion electric power lines, poles, cross-arms, etc., in said county; that appellee was then using, and for a long time prior thereto, had been using, said power lines and appurtenances for the purpose of operating said mine, under an act known as the Illinois Commerce Commission Act, or Public Utilities Act, Cahill's St. ch. 111a; that it maintained a high-tension wire, which carried 6,600 volts of electricity, for the purpose of furnishing power and light to consumers thereof; that opposite the engine room of appellant appellee maintained a pole supporting said high-tension wire, at an altitude of approximately 50 feet; that two additional poles were set near the west end of said engine room of a height of 25 feet, and also two poles near the east end of the engine room of a height of 25 feet; that just west of the two poles at the east end of said engine room, appellee maintained a bank of transformers between the latter poles and the door entering into the engine room from the north; that it ran wires, carrying 6,600 volts of electricity, from the 50-foot poles to the top of the 25-foot pole at the west end of the engine room and from thence down to a cross-arm situated 12 feet above the ground of the *street* and *roadway,* located thereunder, and then ran said wires in an easterly direction to the poles located at the east end of the engine room, and attached them thereto at a point 12 feet from the surface of the *street* and *roadway* thereinafter described; that said wires were over and above a narrow gauge track which was used for the purpose of hauling timbers and other supplies from the timber pile to the tipple and for bringing equipment from the mine to the blacksmith shop for repairs; that said track connected with the engine room, tipple and blacksmith shop, and at places ran parallel with said wires, and at other places crossed in under said wires; that said wires passing parallel with the engine room, and connected with the 25-foot poles, were placed directly above and over said

track which came into the engine room; that the track and the door of the engine room and the *ground* upon which the track was located, and the *ground* adjacent thereto, were used by the employees of appellant as a *roadway* in going to and from the tipple and wash-house and other buildings located on the premises of appellant, and for the purpose of taking supplies into the mine and bringing tools and equipment from the mine, and that the supplies for the engine room were brought from the various parts of the mine proper along this said *street* and *roadway* above described, and directly under said high voltage wire, located 12 feet above the ground, and that said wires were under the direct control of appellee; that on the day aforesaid, the said Ziegler, in the course of his employment with appellant, was engaged in operating the motor which hoisted the coal out of the mine, and that as a part of his duties he was compelled to pass along and under said wires located 12 feet above the ground; that it was the duty of appellee to protect appellant from injury by properly placing the wires according to the standard specifications as required by section 217 of general order 30, but that appellee improperly, wilfully and negligently placed said high-tension wires, carryng 6,600 volts of electricity, at a height of 12 feet from the *crown of the street, highway and roadway* used by the plaintiff's employees and maintained them in violation of said order of the Illinois Commerce Commission.

It is further averred that while said Ziegler was engaged in his duties aforesaid, and was acting in the course and scope of his employment, and in the exercise of due care and caution for his own safety, and was carrying a pipe 12 feet long into the engine room, that as a direct and proximate result of the negligence and carelessness of appellee in constructing and maintaining said electric power line at an altitude lower than that required by the Illinois Commerce Commission,

the said pipe came in contact with said electric wire of high voltage, causing the electricity therein to pass through the pipe and into the body of said Ziegler and causing his death; that because thereof appellant became liable to pay an award of $14,100 under the Workmen's Compensation Act, Cahill's St. ch. 48, ¶ 201 *et seq.,* and became subrogated to the rights of said Zeigler, etc.

Nowhere in the declaration are the rules and regulations of the Illinois Commerce Commission set out. It is apparently assumed by the pleader that the court should take judicial notice of all the rules and regulations adopted by the Illinois Commerce Commission relating to the conduct of business of all the various public utilities in the State. Not only is this proposition conceded to be the law by counsel for appellee, but they cite authorities, some of which tend, in some respects, to support it. It is unnecessary, however, to decide whether the courts of this State are bound to take judicial notice of all the rules and regulations governing the public utilities of the State which the Illinois Commerce Commission may adopt as the declaration cannot be sustained whichever view is taken. If the court is not bound to take such judicial notice then, of course, the declaration is fatally defective in not stating what the rules and regulations of the commerce commission were, the violation of which being the basis of the action.

Assuming, however, that we are bound to take such judicial notice, we find that it is agreed by counsel that the rules and regulations of the commerce commission referred to provide, in substance, as follows: (a) The clear space between the lowest line conductors, service drops, guys, arc or trolley span wires, and the *crown of streets, highways or alleys,* carrying less than 7,500 volts of supply circuits, shall be 20 feet; (b) at points on *public highways* or on *unfenced rights of way* other than at crossings over streets, highways or alleys, the

minimum clearance between the lowest line conductors and the surface of the ground, in supply circuits carrying less than 7,500 volts, shall be 18 feet.

The facts set out in the declaration clearly show that the accident happened upon the private property of appellee. By (a) the clearance between the wires and the crossings of *streets, highways* and *alleys* is specified. By (b) the clearance between the wires and *public highways* or on *unfenced rights of way* other than at crossings over streets, highways or alleys, is specified. The declaration refers to the place of accident in various ways, first as a roadway, then again as a street and roadway, also simply as the ground and finally as the crown of the street, highway and roadway. The said rules and regulations do not refer in any way to roadways. A roadway may be either public or private, according to its location and is not synonymous with highway, street, alley or right of way. The term ''highway'' includes all public ways which the public, generally, has a right to use for passage and traffic and includes streets in cities, sidewalks, turn pikes and bridges. *Mobile & O. R. Co. v. Davis,* 130 Ill. 146. The term ''street'' in its general sense means a public highway located within a town, village or city. It is apparent therefore that the place where the deceased came in contact with the wires in question was not on a street or highway. An alley may be either public or private, but the doctrine of the rule *ejusdem generis* must be applied in reference to the word ''alley.'' The word ''alley,'' used in the same connection with streets and highways, must be construed as meaning a public alley. It is not claimed, however, in the declaration, that the place of the accident was an alley, either public or private, nor can the place in question be deemed a right of way. A right of way is an easement. 34 Cyc. 1767. An easement in lands cannot be created by parol, but only by

grant or by prescription, which presumes a grant. *Girard v. Lehigh Stone Co.*, 280 Ill. 479.

It is apparent, therefore, that the rules and regulations of the Illinois Commerce Commission referred to do not apply to the height of wires carrying electric current when extending over private property, and consequently there could be no violation of such rules and regulations under the facts stated in the declaration.

The judgment of the circuit court is affirmed.

*Affirmed.*