DOROTHY B. COHEN, formerly DOROTHY B. ALEXANDER, Plaintiff-Appellee, *v.* McKEY & POAGUE, INC., Defendant-Appellant.

(No. 54764;

First District—September 14, 1971.

*Rehearing denied October 20, 1971.*

Kirkland, Ellis, Hodson, Chaffetz & Masters, of Chicago, (William D. Maddux and John M. O'Connor, Jr., of counsel,) for appellant.

Brown, Dashow, Langeluttig, Arons & Doran, of Chicago, (Norman H. Arons, of counsel,) for appellee.

Mr. JUSTICE STAMOS delivered the opinion of the court:

Plaintiff, a former real estate saleswoman, brought suit against her former employer, McKey and Poague, for one-half of the real estate broker's commission received by it from the sale of a multi-million dollar real estate development.

The jury returned a verdict in favor of defendant. However, the trial court entered judgment in plaintiff's favor in the amount of $7,500.00 notwithstanding the verdict. The trial court also conditionally granted plaintiff a new trial in the event the judgment notwithstanding the verdict is reversed.

Defendant appeals and contends that the trial court erred in entering judgment for plaintiff notwithstanding verdict and in granting plaintiff a conditional new trial.

The evidence reveals that plaintiff assumed her duties as a real estate salesperson for defendant's Chatham office on February 13, 1959. There was no written agreement as to the terms of plaintiff's employment. Plaintiff testified that she was to receive a specific commission based upon what was customary; that the custom of the real estate business was to grant commissions where the salesperson produced a buyer ready, willing and able to perform; and that the commission was to equal 50% of the broker's commission.

John Gilmore, defendant's Chatham officer manager, testified that the 50% commission was a set custom in the office on usual business and that to earn this commission the salesperson must not only produce someone ready, whilling and able, but also must participate in the vari-

ous stages leading to the consummation of the sale. He further testified that the custom is to pay the commission to the salesperson only upon consummation of the sale after the salesperson has convinced the principals as to the advantages and economics of the transaction and reduced the agreement to a signed contract.

During February, 1960, plaintiff received a brochure from defendant as did the other sales personnel, describing for sale a certain parcel of real estate now known as Chatham Park Village which consisted of 550 living units. The property was then owned by the "Cottage 83 Company" and, at all times pertinent herein, was on an open listing originating from the brokerage firm of Heinsimer and McIntosh. After reading the brochure, plaintiff called her brother Julius Yacker, an attorney-at-law, whose firm knew of groups interested in this form of investment. Yacker became interested in the property and accompanied plaintiff to inspect it. Yacker introduced plaintiff to Marshall Tarre, who represented a group of investors. Both plaintiff and Yacker accompanied Tarre to inspect the property. Tarre became interested in the property and the parties began preliminary negotiations. During this period of time, plaintiff informed Gilmore of Tarre's interest and Yacker's involvement. However, the negotiations with Tarre ended when one of the chief backers of Tarre's group withdrew. Subsequently, plaintiff heard that it was possible through new FHA legislation, referred to as section 213, to better facilitate disposition of the subject property through a new form of financing. Gilmore testified that he was the party who informed plaintiff of the new legislation. Plaintiff related her knowledge of the new legislation to Yacker who then consulted with officials of the Cooperative Housing Division of the FHA. The Cooperative Housing Advisor expressed an interest in processing the subject property and referred Yacker to Roger Wilcox, president of the Foundation for Cooperative Housing. Yacker was informed that the Foundation provided organizational sales service for cooperative housing developments. Yacker then contacted Wilcox and both he and plaintiff conducted Wilcox on an inspection of the subject property. Wilcox expressed his Foundation's interest in the property and embarked upon further discussions with Yacker concerning the new FHA financing. After Gilmore had again been advised by plaintiff of interest in the property, he informed Yacker that because of the size and complexity of the deal, he would prefer that Yacker deal directly with him.

As the discussions progressed, plaintiff requested Gilmore to arrange a meeting between the principals. The meeting was held with Yacker, Gilmore, and representatives of "Cottage 83" and Heinsimer and McIntosh in attendance. At this meeting the "Cottage 83" group was advised

of the new form of financing under FHA. Plaintiff testified that the meeting took place in April, 1960, and that she did not attend because Gilmore told her that it was not necessary. However, a letter from Yacker to Gilmore was entered in evidence relating that the meeting occurred on March 24, 1960. Moreover, Gilmore denied that he hold plaintiff not to attend. After this meeting Yacker dealt directly with "Cottage 83" due to the problems of dealing through an intermediary in a complex transaction such as this. Plaintiff had no further contact with the principals or the negotiations. However, Yacker kept plaintiff and Gilmore informed as to the progress of the transaction. Two or three weeks after the meeting "Cottage 83" agreed to submit the application to FHA for the requisite financing. Yacker was to handle the processing of the applications.

Plaintiff continued to work in defendant's employ until the fall of 1960 when due to illness, she left on a leave of absence never to return. Her employment was officially terminated in December, 1960.

The Foundation and "Cottage 83" continued their negotiations through Yacker. Due to the fact that the legislation was new, a considerable amount of time and effort was expended in processing the applications with FHA. On many occasions the FHA required amendments to the application. At one time "Cottage 83" withdrew from negotiation contending that the FHA was too difficult to deal with. However, the FHA eventually agreed to finance the transaction in the amount of $4,730,-000.00 and the sale was finally consummated with title to the subject property passing in June, 1962. Yacker represented the purchasers as counsel at the closing. Title was conveyed from "Cottage 83" to Chatham Park Village Cooperative, an Illinois not for profit corporation set up by Wilcox's Foundation.

Pursuant to an agreement dated July 31, 1961, "Cottage 83" paid both Heinsimer and McIntosh and defendant $15,000.00 each as brokerage commission. Of the $15,000.00 which defendant received, 40 per cent was paid to Gilmore with the defendant retaining 60 per cent. Plaintiff was not given any commission. Plaintiff testified that she was not aware of the July 31, 1961, agreement and that when she asked Gilmore about her commission, he stated that he knew nothing about the amount allegedly due her. Gilmore testified that this transaction was not usual business but rather a sophisticated relationship where the salesperson's commission would be dependent upon the salesperson's ability to participate in guiding the transaction; that he worked closely with plaintiff in the initial stages, but did not later call on her for help because she was no longer in defendant's employ; and that since plaintiff's contribution was minor, the bulk of the negotiations were on his shoulders.

Gilmore further testified that there was no arrangement with plaintiff as to her commission on the sale, since she left defendant's employ before the July 31, 1961, agreement; that she normally would have received 50 per cent; and that she was not paid since she contributed little or no effort.

OPINION

■■ Defendant's initial contention is that the trial court erred in entering judgment for plaintiff notwithstanding the verdict contrary to the standard enunciated by the Supreme Court in *Pedrick v. Peoria and Eastern Railroad Company*, 37 Ill.2d 494, at page 510: "In our judgment verdicts ought to be directed and judgments n.o.v. entered only in those cases in which all of the evidence, when viewed in its aspect most favorable to the opponent, so overwhelmingly favors movant that no contrary verdict based on that evidence could ever stand."

The jury in the present case was instructed that plaintiff had to "prove that she procured the purchaser who was ready, willing and able to purchase on the terms stipulated by owner."

■■ In *Moehling v. Brickman*, 98 Ill.App.2d 156, this court stated at page 163: "In determining whether a broker's conduct is the procuring cause of a sale, we agree with the proposition that if a broker introduces property to a buyer who thereafter purchases the property, the broker is entitled to a commission in the absence of any intervening instrumentality which may be regarded as the effective or efficient cause of sale. (Cases cited). Where there is an intervening effective agency such as successful negotiations by another broker it follows that a broker will not be entitled to a commission merely because of his initial introduction of the property to a purchaser."

■■ The determination of whether plaintiff's efforts were the procuring cause and whether there was an intervening effective agency or instrumentality were primary issues of fact for the jury. The evidence on these issues was lengthy and involved. When viewed in its aspect most favorable to defendant we do not find that it so overwhelmingly favored plaintiff that the verdict in defendant's favor could not stand.

■■ Therefore, we hold that the trial court erred in entering judgment notwithstanding the verdict.

Defendant next contends that the trial court erred in granting plaintiff a conditional new trial.

■■ In *Deaver v. Hickox*, 121 Ill.App.2d 465, this court stated at page 471: "We are called upon to review the conditional rule of granting a new trial, chapter 110, § 68.1(6), Ill. Rev. Stat., 1967. An abuse of discretion is shown where it appears that the trial court set aside the jury's verdict and granted a new trial essentially because it would have

decided the case differently had it been the trier of fact, or because it concludes that inferences drawn by the court are more reasonable than those reached by the jury:

'The trial court cannot substitute its inferences and conclusions of fact for those drawn by the jury if those drawn by the jury find reasonable support in the evidence'."

■■ We find this language particularly applicable to the present case. However, plaintiff maintains that the trial court erred in giving the instruction which required plaintiff to prove that she procured a purchaser who was ready, willing and able to purchase on the terms stipulated by the owner. The argument is not meritorious in light of the fact that plaintiff herself testified that her commissions were predicated upon the foregoing standard.

Therefore, we reverse the judgment notwithstanding the verdict and the conditional new trial and remand the cause with directions to enter judgment on the verdict.

Reversed and remanded with directions.

LEIGHTON, P.J., and SCHWARTZ, J., concur.