STEVE FERMAN, Plaintiff-Appellee, v. ESTWING MANUFACTURING COMPANY et al., Defendants.—(ESTWING MANUFACTURING COMPANY, Defendant-Appellant.)

(No. 59338; ▮▮▮▮▮▮▮▮▮▮▮▮)

First District (5th Division)—July 25, 1975.

Kralovec, Sweeney, Marquard & Doyle, of Chicago (Henry J. Marquard and Edward V. Scoby, of counsel), for appellant.

Karlin and Fleisher, of Chicago (Barry M. Woldman, of counsel), for appellee.

Mr. JUSTICE DRUCKER delivered the opinion of the court:

Plaintiff brought a personal injury action against Estwing Manufacturing Company, herein after defendant, and Nelson E. Wieters. A jury verdict was returned in favor of both defendant and Wieters. The trial court denied plaintiff's motion for a new trial with regard to Wieters but granted it with regard to defendant. Pursuant to Supreme Court Rule 306 (Ill. Rev. Stat. 1973, ch. 110A, par. 306) we granted defendant leave to appeal. The sole issue raised is that the court below abused its discretion in granting plaintiff's motion for a new trial against defendant.

While on a camping expedition supervised by Wieters, plaintiff had occasion to use a geologists' rock pick manufactured by defendant. During the course of this use, the pick allegedly shattered, and plaintiff was struck in the left eye by a particle. He was hospitalized and his eye was removed. As a result of this incident plaintiff brought a two-count personal-injury action. Count I alleged that defendant was strictly liable in tort due to the defective design and manufacture of the pick; Count II alleged that Wieters was liable due to his negligent supervision and instruction of the campers during the expedition.

It was adduced at trial that Wieters, who holds a masters degree in community recreation, organized and supervised an advanced camping program for teenagers who had progressed beyond more conventional camping experiences. Wieters called his program "Man and his Land." It consisted of a motor tour of the western United States during which the campers would engage in such activities as water skiing, scuba diving, horseback treks into the Grand Canyon, mountain climbing, river trips on rubber rafts and fossil hunting.

Plaintiff joined the expedition in June 1965. He was 15 years old and remained with the group until August 16, 1965, when the expedition reached Deadwood, South Dakota. In preparation for fossil and gem hunting activities to be conducted during the next 2 days, Wieters instructed the campers on the use of the rock pick. He told them to use the face end of the pick to break open the rocks, turning their heads away to avoid flying chips, and then the pointed end to pick out the gem or fossil. The picks were distributed before dinner. That evening, shortly after dark, plaintiff was seen in a gravel pit striking rocks with his pick, "making sparks." He felt a pain in his left eye, informed the camp nurse and Wieters and was taken to a hospital.

The picks were first distributed to the campers in June at approximately the time plaintiff joined the group and had been used to drive tent stakes. The blunt ends were used for this purpose. When not in use the picks were supposed to be returned to one of the vehicles in the expedition.

Basically, the pick was a 14-ounce piece of forged steel consisting of a

handle and a head. One end of the head was blunt, the other was pointed. The pick was manufactured by first cutting steel bars into lengths and then forging them. The face and tip of the pick were hardened and tempered by alternately placing them in ovens and then salt baths. Plaintiff introduced expert testimony to the effect that the chemical composition of the particle taken from his eye was identical to that of the material found in the tip of the pick, that upon testing it was found that the metal used in the pick was of a harder level than that considered optimal for use in rock picks, that the brittleness of the pick was the result of improper tempering during its manufacture, and that a tip which is too hard and brittle is apt to chip. In addition, plaintiff introduced evidence that in 1967, defendant first began to apply warning decals to the picks bearing the following legend:

"Caution: Rock picks may chip when struck against formations or other surfaces harder than the pick. If face mushrooms or point wears down, grind off. For utmost safety, always wear Estwing safety goggles."

As early as 1956, defendant distributed brochures which recommended the wearing of safety goggles when working with the rock pick.

Defendant introduced expert testimony to the effect that the particle removed from plaintiff's eye was not of the identical chemical composition as that of the material found in the tip of the pick, and that shear fractures or planes had developed in the tip of the pick plaintiff was using. The microstructure of the metal within those planes had changed. These planes or "fractures were developed as a result of glancing blows on the pick end." When a glancing blow is struck with the pick on an abrasive surface, sparks would be seen. The material in the pick had the capability of allowing only a limited amount of planing before it would chip.

Following a jury verdict in favor of both defendant and Wieters, plaintiff filed a post-trial motion claiming, *inter alia*, that the verdict was against the manifest weight of the evidence, that the jury had been improperly instructed, and that he was prejudiced by extensive trial error. Following argument on the motion, the court granted plaintiff a new trial as to defendant only. The court provided a detailed finding setting forth the basis of his order. It stated that during the course of the proceedings the court noted that "at least one juror, by facial, bodily and indeed verbal expressions, became bored with and resentful of the litigation in general and the lawyers in particular." This juror's antipathy was directed most especially toward counsel for plaintiff. The juror refused to look at the lawyers or the witnesses, kept her eyes closed much of the time and "was heard audibly to groan more than once during the presentation of evidence."

The court stated that it brought this matter to the attention of counsel and, by agreement, brought the juror into chambers to inquire as to her health. She denied "any ill-being and requested to remain on the jury." The court twice raised the possibility of proceeding with only 11 jurors and once raised the possibility of declaring a mistrial. Counsel requested that the case proceed. By stipulation of counsel the court twice "remind[ed] the jury in open court of their duty." "It was with serious misgivings that [the] Court instructed the jury and sent them to the Deliberation Room at the close of the case." In conclusion, the court found that plaintiff "failed to raise a justiciable issue of fact for the determination of the jury against defendant, Wieters * * *." However, it found that "a justiciable issue of fact was raised * * * against defendant, Estwing Manufacturing Company, Inc., and that the verdict of the jury with regard to said Estwing Manufacturing Company, Inc., evidences a clear misunderstanding of the law in a products liability case, and/or a clear prejudice against the plaintiff."

OPINION

Defendant contends that the trial court abused its discretion in ordering a new trial. In response, plaintiff has argued that the court's finding of juror misconduct constituted sufficient grounds for granting a new trial and that, moreover, the court's order was inferentially grounded on a finding that the jury verdict was against the preponderance of the evidence. ■■ Where contentions are presented which fairly challenge the propriety of an order granting a motion for a new trial, this court would not be warranted in disregarding them by merely reiterating the principle that a reviewing court should not interfere with the discretion of the trial judge. (See *Redmond v. City of Chicago*, 10 Ill.App.3d 567, 294 N.E.2d 761.) In the instant case the grounds set forth by the court below as the basis for granting a new trial are simply inadequate to justify the order. In essence, it appears that the trial judge was disturbed by the conduct of a single juror during the course of the proceedings. He felt that she appeared bored, inattentive and, perhaps, ill. However, when he expressed to this juror his concern regarding her actions, she assured him she was well and expressed her desire to remain on the jury. We note that her conduct was never objected to by counsel, nor was it asserted as grounds for a new trial in plaintiff's post-trial motion. Indeed, on two occasions when the court expressed its concern over this matter, counsel for both defendants and plaintiff insisted that the trial proceed and that the juror not be dismissed. The court's apprehensions were not sufficient to dissuade it from submitting the case to the jury.

It is to be presumed that a jury will do its sworn duty and follow

the instructions of the court. (*Cf. Hall v. Chicago & North Western Ry. Co.*, 5 Ill.2d 135, 125 N.E.2d 77.) In an early criminal case, *Baxter v. People* (1846), 8 Ill. 368, the supreme court was confronted with the contention that the illness of a juror prevented him from adequately comprehending the issues in the case, and this constituted grounds for overturning a verdict. The juror was so ill that the court provided him with a pallet upon which he lay during a portion of the proceedings. During closing argument of defense counsel the juror had a chill, "for a time was in sort of a drowse" and thought he did not fully comprehend the whole of the argument. The court held at page 379 that in "case a juror becomes unable to go on with the trial, the court, on ascertaining the fact, will either suspend the trial, or discharge him altogether and impanel another in his place, and commence the trial again. But to establish the rule that, because some one of the jurors did not hear and comprehend everything which was said to them, the verdict should be set aside, would endanger altogether too many verdicts * * *."

In *Kozlowski v. City of Chicago*, 13 Ill.App. 513, it was held that the fact a juror fell asleep during the proceedings, absent an affirmative showing of prejudice to the movant, was not grounds for granting a motion for a new trial.

■■ If, in the case at bar, the trial judge was concerned with juror misconduct, he had the authority to declare a mistrial. It is clear that he had knowledge of all factors mentioned in the new trial order prior to submitting the case to the jury. However, at the insistence of counsel he chose to let the case proceed to a verdict. We believe that the granting of a new trial on the basis of mere speculation that a single juror's mannerisms indicated prejudice toward plaintiff constituted a clear abuse of discretion.

We note that plaintiff has cited authority for the proposition that prejudicial jury misconduct may necessitate the granting of a motion for a new trial. We do not dispute this proposition of law. We believe, however, that all cases cited by plaintiff are distinguishable from the case at bar. For example, in *Mobile & Ohio R.R. Co. v. Davis*, 130 Ill. 146, 22 N.E. 850, it was held that a new trial was required when, after evidence was closed but before final arguments, the attorney for the plaintiff, who was the prevailing party, was seen drinking and "clinking" glasses in a public saloon with one of the jurors trying the case. In *West Chicago St. R.R. Co. v. Huhnke*, 82 Ill.App. 404, a motion for new trial was granted and upheld on appeal where it was demonstrated that the foreman of the jury "swore untruthfully on his *voir dire*" concerning his prejudice toward the appellant's attorney. In both cases the evidence of juror misconduct prejudicing a party to the litigation was clear and overwhelming.

In the instant case it is arguable whether any juror misconduct occurred and, moreover, even assuming it had in fact occurred, there was no convincing demonstration that plaintiff was prejudiced by it. The court's order granting a new trial must be reversed.

Plaintiff has argued in the alternative that we may infer the order for a new trial was based on the court's belief that the jury verdict in favor of defendant was against the preponderance of the evidence. To make such an inference, however, would require us to ignore the fact that the court's express basis for granting plaintiff's motion for a new trial was grounded exclusively on assertions of juror misconduct. Moreover, even if the order had been predicated on the ground that the verdict was against the manifest weight of the evidence, we believe it would have been in error.

It is well established that:

"An abuse of discretion is shown * * * where it appears that the trial court set aside a verdict and granted a new trial merely because it would have decided the case differently had it been the trier of fact, or because it feels that inferences or conclusions other than those drawn by the jury are more reasonable. The trial court cannot substitute its inferences and conclusions of fact for those drawn by the jury if those drawn by the jury find reasonable support in the evidence, Foster v. VanGilder, 65 Ill.App.2d 373, 213 N.E.2d 421, for it is the jury's function to weigh the conflicts and discrepancies in the evidence, to determine if the witnesses' testimony is credible, in whole or in part, and to draw the ultimate conclusions of fact. Finley v. New York Cent. R. Co., 19 Ill.2d 428, 167 N.E.2d 212." Dunlavey v. Patti, 79 Ill.App.2d 442, 446, 223 N.E.2d 858; see also Cohen v. McKey & Poague, Inc., 1 Ill.App.3d 596, 274 N.E.2d 684.

Plaintiff's case was predicated on the "common premise" of products liability law "that those products are defective which are dangerous because they fail to perform in the manner reasonably to be expected in light of their nature and intended function." (Dunham v. Vaughan & Bushnell Manufacturing Co., 42 Ill.2d 339, 342, 247 N.E.2d 401.) In Dunham, a case involving a factual situation almost identical to that at bar, the plaintiff lost the sight of an eye as a result of a chip flying off the beveled edge of a claw hammer he was using. The court held that while a new hammer would not be expected to chip, at some point in its life the possibility of chipping might become a reasonable expectation and a part of the hammer's likely performance. It was further held that the determination as to the precise point in time at which the manufacturer

would no longer be liable for harm resulting from its chipping was one to be made by the jury.

■■ In the instant case the rock pick had apparently been in use throughout the summer to drive tent stakes. The plaintiff was seen striking rocks with the pick, "making sparks," at the time of his injury. Defendant introduced the testimony of an expert metallurgist indicating that this constituted an abusive use of the pick, and that it would be expected that chipping, resulting from fracturing in the tip, would occur. We are, of course, aware that plaintiff presented evidence that a softer tip would be more appropriate in a rock pick, and that the hardness in the tip of the picks manufactured by defendant was the result of improper tempering. However, the jury was fully instructed on this issue and resolved the conflicts in evidence in favor of defendant. On the basis of this record we believe that it was error to rule that their determination was against the preponderance of the evidence.

Plaintiff has also urged us to consider the statement of the trial court in its new trial order that "the verdict of the jury * * * evidences a clear misunderstanding of the law in a products liability case." As indicated above, both plaintiff and defendant introduced a great deal of evidence on the matter of the procedures used to manufacture the pick, the effect extensive use would have on it and the presence or absence of necessary warnings. The jury was thoroughly instructed on the law of products liability. We believe then that the court's conclusional statement to the effect that the jury misunderstood the law regarding this issue is totally unsubstantiated.

For the foregoing reasons we reverse the order granting plaintiff a new trial against defendant and remand the cause with directions that judgment be entered on the verdict.

Reversed and remanded with directions.

BARRETT, P. J., and LORENZ, J., concur.