W. F. Smith & Co., Plaintiff-Appellant, *v.* Kurt J. Lowenstein *et al.*,
Defendants-Appellees.

(No. 55233;

First District—February 17, 1972.

Paul M. Lurie, of Chicago, for appellant.

Richard J. Short and Sidney Goldstein, both of Chicago, for appellees.

Mr. PRESIDING JUSTICE McGLOON delivered the opinion of the court:

This is an appeal from a judgment of the Circuit Court, in a bench trial, denying a claim by the plaintiff for a brokerage commission. The plaintiff, a real estate brokerage firm, alleged that it earned such commission when it delivered to defendant-sellers a willing buyer for the real property which the defendants had for sale.

We affirm.

The facts in this case are as follows. The defendant-sellers Lowenstein and Lebo owned, in partnership, a two-flat building in Chicago. Sometime in January of 1968 they requested the plaintiff, through its president, William F. Smith, to seek a buyer for this building, and the plaintiff agreed to do so. No written agreement was ever made between plaintiff and defendant-sellers. However, one of the defendant-sellers gave undisputed testimony that there was never any question, should the plaintiff procure a buyer, about paying the plaintiff the legal commission. This defendant-seller agreed that such legal commission would be the standard fee then being charged by the Chicago Real Estate Board. There was undisputed testimony that at the time such fee was six (6%) per cent of the selling price.

Proceeding under its oral agreement the plaintiff, acting through William F. Smith, produced a husband and wife willing to buy the sellers' building. In March of 1968 a written contract was entered into

by the sellers and the prospective buyers whereby the sellers agreed to sell their building together with certain personal property therein for a price of $29,000. The sellers desired $30,000, and the contract was subsequently amended, with the consent of all parties, to a price of $30,000.

Because of the inability of the buyers to secure adequate mortgage financing, the aforementioned written contract became null and void by its own terms. Further discussions then ensued between these same buyers, the sellers and William F. Smith, acting for the plaintiff, as to how the sellers' desired price of $30,000 could be met.

The plaintiff's witnesses, William F. Smith and another employee, a Mrs. Johnson, testified that they met with the sellers on April 29, 1968. They testified that an express oral agreement was reached by all parties present whereby the sellers' desired price of $30,000 would be achieved via a sale of the real property, *i.e.*, the building alone, for a price of $28,000 and a sale of the personal property therein for $2,000 under a separate chattel mortgage agreement. According to Mr. Smith it was the sellers who suggested the use of a chattel mortgage. Smith testified that the sellers were to hold the chattel mortgage and that the sellers agreed to prepare the chattel mortgage documents.

Mrs. Johnson testified that on April 30, 1968, she gave the sellers a written real estate contract, signed by the buyers and covering the sale of the defendants' real property, *i.e.*, the building only, for the agreed price of $28,000. This contract contained no reference to the chattel mortgage. The sellers took possession of this contract, and several weeks later their attorney notified the plaintiff that the contract was unacceptable and further that the sellers had entered into a written contract to sell the property to other buyers for $31,000.

William F. Smith testified that the first time the sellers made any mention of requiring approval of their attorney before going ahead with the sale was several days after the alleged agreement of April 29, 1968.

The sellers testified that there was a meeting with the agents of the plaintiff on April 29, 1968. At this meeting the sellers agreed that there was conversation regarding a real estate contract for $28,000 covering the real property only and a chattel mortgage for $2,000 covering the personal property. However, both sellers testified that they expressly conditioned the acceptance of any such arrangement upon approval thereof by their attorney. The testimony of Mr. Lowenstein on this matter was as follows:

"Q. Now, what else did Mr. Smith tell you?

A. He told us that he would draw another contract, and he would see to it that we would get $30,000. And we told him, "Whatever you want to do. Go right ahead and do it. We'll submit it to our

lawyer which we had done in further instances, in other instances with contracts. * * *

Q. And did you sign the contract that was submitted to you by Mrs. Johnson on the 30th of April?

A. No, sir.

Q. Did your wife Mrs. Lowenstein?

A. No, sir.

Q. And did you, at any time, agree to any of the plan submitted by Mr. Smith to you for the sale of the property?

A. No, sir. I did not.

On cross-examination Lowenstein testified:

Q. * * * Mr. Lowenstein, did you ever recall having a conversation with Mr. Lebo as to whether you should take the deal of $28,000.00 for the real estate, and $2,000.00 for the chattel mortgage?

A. No, sir.

Q. You never recall having any discussions?

A. Discussions, yes.

Q. Do you recall what you said during those discussions to Mr. Lebo?

A. This was no discussion. Mr. Smith made this proposition.

Q. Subsequent to that proposition, did you have any conversation with Mr. Lebo concerning whether you should take—

A. I said to him—

Q. You said to whom?

A. To Mr. Lebo, "Well, let them come up with some—"

Q. Do you recall a deposition at our office on February 28, 1969?

A. Yes.

Q. And do you recall my asking you a question, "Did you have any discussions with Mr. Lebo at this time, referring to the 29th or immediately thereafter, concerning whether this would be an acceptable way of handling the deal."

And you answered, "We discussed it."

Do you remember that?

A. Well, yes.

Q. Do you recall the further question, "What did you say to Mr. Lebo?"

And your answer, "Well, I said we should give it up, talk with Mr. Goldstein. We should discuss it with him, discuss it with our lawyer." And do you remember that?

A. Yes.

Q. Do you remember the further question, "Did you tell Mr. Lebo

you thought it was a good idea?" Do you remember that question.

A. I don't know, but it's a year ago now.

Q. Do you remember your answer? "I said if we can't get anything else, that's the best we can get, we should consider it." Do you recall that?

A. Yes.

Q. Do you recall the further question? "Did you tell Mr. Smith that you also—did you tell Mr. Smith that you thought it was a good idea if we couldn't get any other deal?"

And your answer, "If we couldn't get any other kind of deal."

A. Yes.

Mr. Lurie: No further questions.

On direct examination Mr. Lebo testified:

Q. Now, did you have a conversation with Mr. Smith about the sale of the property at 7313 Bennett?

A. Yes, sir.

Q. And what was that conversation about?

The Court: Do I understand that this is the conversation of April 29?

Mr. Goldstein: April 29, yes.

A. The conversation had reference to the fact that the buyer Mingo was unable to satisfy the proper mortgage. And a subsequent alternative was suggested by Mr. Smith in reference to the possibility of a chattel mortgage.

Q. Now, did you suggest that or did Mr. Smith suggest that?

A. Mr. Smith suggested it.

Q. In your conversation with Mr. Smith was there any conversation about a contract.

A. In my conversation, in our conversation, there was a discussion about concluding a deal, based upon a $2,000.00 chattel mortgage which I advised would have to be submitted to our attorney for his approval."

The trial court, as noted, ruled for the defendant-sellers holding that the written contract submitted to them was a counter-offer which was not accepted, and hence no contract ever arose, and the plaintiff was, therefore, not entitled to any commission.

On appeal the arguments are essentially the same as the parties urged at trial. The plaintiff argues that it produced a willing and qualified buyer on the terms and conditions required by the defendants and in so doing became entitled to its commission. The plaintiff argues that, in fact, there was on April 29, 1968, an unqualified agreement by the sellers to accept the arrangement of a $28,000 real estate contract and a $2,000

chattel mortgage and that any condition of approval by the sellers' attorney could only be construed to mean that the attorney was to approve the form of the chattel mortgage and nothing more.

The defendants respond that the buyers produced by the plaintiff were not buyers willing and able to deal on the terms required by the defendants. As evidence of this they argue that the written contract for $28,000 contained no reference to the agreed upon chattel mortgage and, therefore, was not in compliance with the terms requested by the sellers. Further, the defendants argue that there was an express condition of their attorney's approval of the proposed arrangement of a $28,000 real estate contract and a $2,000 chattel mortgage before any binding acceptance by them would be given. They argue that they submitted the contract to their attorney, and he rejected it. Thus, this necessary condition was never met.

■■ It is a well supported proposition of law that a broker is entitled to his commissions when he presents a buyer who is ready, willing and able to buy on the terms and conditions proposed by the seller. (*Monroe v. Snow* (1890), 131 Ill. 126, 23 N.E. 401.) In the case at bar, the record discloses that the testimony was in dispute relative to the meeting of April 29, 1968, as to what, if anything, was agreed upon, which parties suggested which procedures, and what, if any, conditions were imposed by the parties. Where testimony is contradictory, it is well established that, in a trial without a jury, the credibility of the witnesses and the weight to be afforded their testimony are matters for the determination of the trial court, and its findings will not be disturbed unless they are manifestly against the weight of the evidence. (*Stilwell v. Continental Illinois National Bank and Trust Company of Chicago* (1964), 31 Ill.2d 546, 202 N.E.2d 477.) In the instant case the determination of the trial court was in favor of the defendants. Our review of the record does not lead us to conclude that determination was against the manifest weight of the evidence.

■■ We note that the plaintiff argues that there is and was no dispute over the fact that there was an unconditional agreement by the sellers to accept the proposal of a deal based on a $28,000 real estate contract and a $2,000 chattel mortgage. In support of this it cites not only the testimony of plaintiff but the testimony of Lowenstein who, when asked his response to the proposal of William F. Smith to sell the property under the arrangement utilizing a conditional sales agreement, said: "We told him whatever you want to do. Go right ahead and do it. We will submit it to our lawyer." Also Lowenstein acknowledged that in a pre-trial deposition taken by plaintiff he told plaintiff that he had told Lebo: "If we can't get anything else, that's the best we can get, we should con-

sider it.  *  *  *  thought it was a good idea if we can't get any other kind of deal." We do not think any of this testimony establishes either unequivocal or unconditional agreement by the defendants. On the contrary, we think that the testimony of the defendants, as set out earlier, clearly establishes that not only was there no biding agreement, but that the defendants expressly made the existence of any binding agreement dependent upon the approval of their attorney. This condition was made known to the plaintiff. Therefore, its right to a commission depended on its finding an able and willing buyer whose offer to purchase, in all its necessary aspects, fulfilled this condition. The plaintiff was not able to do so, and therefore was not entitled to a commission.

■■■ In further support of its argument that there is no dispute as to the fact of an agreement on April 29, 1968, the plaintiff on oral argument alluded to several statements contained in the brief, which the defendants filed in this court. These statements are alleged acknowledgements by defendants that such an agreement was made. We will only say that barring any express stipulation on this matter of which we are not aware, it is the record on appeal which binds the parties and controls the reviewing court in the consideration of the appeal. *Weinberg v. Jenkins* (1944), 323 Ill.App. 363, 55 N.E.2d 542.

■■■ Finally, we must make mention of the fact that the theory of the trial court advanced in support of its holding was that the written real estate contract for $28,000 tendered to the defendants on April 30, 1968, constituted a counter-offer in that it contained no mention of the chattel mortgage which was not accepted by defendants. The trial court concluded that since no binding contract thus arose between buyers and sellers, the plaintiff had no right to a commission. The plaintiff argues that the lack of a binding contract between these parties would not control his right to a commission and that the court was thus confused as to the correct rule. Even were we to agree with the plaintiff that the trial court's theory was mistaken, such agreement would be of no significance to the outcome of this appeal. A reviewing court will affirm the judgment of the trial court if it is justified in the law for any reason or ground appearing in the record irrespective of whether the particular reasons given by the trial judge, or his specific findings, are correct or sound. *Reidelberger v. Bi-State Development Agency* (1956), 8 Ill.2d 121, 133 N.E.2d 272; *City of Chicago v. Reid* (1968), 95 Ill.App.2d 313, 237 N.E.2d 739.

Judgment affirmed.

DEMPSEY and McNAMARA, JJ., concur.