KENROY, INC., Plaintiff-Appellee, *v.* ALFRED BERTHOLD, Defendant-Appellant.

(No. 56097;

First District (1st Division)—May 21, 1973.

McCarthy, Scheurich, Duffy & McCarthy, of Chicago, (Daniel J. McCarthy and Frank K. Neidhart, of counsel,) for appellant.

Marks, Marks and Kaplan, of Chicago, (Alan P. Sobel, of counsel,) for appellee.

Mr. JUSTICE GOLDBERG delivered the opinion of the court:

Kenroy, Inc. (plaintiff) sued for recovery of a real estate brokerage commission from Alfred Berthold (defendant). After trial without a jury, the court entered judgment for plaintiff in the amount of $5,394.10. Defendant appeals.

Defendant contends that plaintiff's action is barred because it failed to obtain a broker's license pursuant to the ordinance of Elk Grove Village where the property is located. Defendant also contends that the judgment is against the manifest weight of the evidence. Plaintiff responds that the village ordinances did not require it to obtain a license and such failure did not render the agreement for payment of commission unenforceable. Plaintiff urges that the penalties expressed in the ordinances do not affect enforcement of the brokerage contract. Plaintiff also contends that the findings of the trial judge are amply supported by the evidence.

The property in question here is located within the Village of Elk Grove. Plaintiff is duly licensed as a real estate broker by the State of Illinois and by the Village of Lincolnwood. Plaintiff's offices are located in that village. Plaintiff is not licensed by Elk Grove. In July of 1961, Elk Grove Village adopted an ordinance which provided that no person, firm or corporation should operate as a real estate broker without a license. The ordinance provided for the making of applications and the issuance of licenses. In the section headed "Penalty", it provided that any person licensed thereunder who was guilty of any violation thereof should be fined from $5 to $100 for each offense. On each day that a violation occurred, it was deemed a separate offense. Provision was made for revocation of the license after the second offense. The ordinance contains no provision concerning broker's commissions.

On August 20, 1968, the village authorities also adopted a Fair Hous-

ing Ordinance. The brokerage contract herein involved was executed by the parties on April 15, 1968, but steps taken by plaintiff in performance of the contract extended into 1969 after the effective date of the ordinance. The ordinance contained a declaration of policy and stated its purpose as that of securing fair housing, without discrimination, to all persons who desire to live in the village. It defined housing as including any building or structure used, or designed to be used, for housing and including vacant land within the village. Various provisions were set forth regarding the conduct of real estate brokers in dealing with all persons without discrimination; presenting housing on the market; advertising and other details. The ordinance also provided that every real estate broker should obtain a license from the village prior to transacting any business involving real estate in the village. It also provided, "The commission of a single act as such real estate broker without such license shall constitute a violation of this Ordinance." The ordinance also contained detailed provisions for the issuance of licenses, for the making and processing of complaints before the Human Relations Commission of the village and for the revocation of brokers' licenses. It provided that any person who violated any provision of the ordinance should be subject to a fine not to exceed $500.

A number of points are raised and argued extensively by counsel for both parties concerning these ordinances. For example, defendant urges that the Fair Housing Ordinance expressly provides that every real estate broker shall obtain a license before transacting business involving real estate in the village and that the commission of a single act as broker without a license shall constitute a violation. Defendant further urges that the original brokers' license ordinance expressly prohibits operation as a broker without obtaining a license. In response, plaintiff contends that neither of these ordinances contains express language invalidating the brokerage contract or prohibiting recovery of commission thereunder but merely provides for assessment of a fine against the broker for violation. As regards application of the Fair Housing Ordinance, plaintiff contends that it applies only to residential housing, or land zoned for that purpose, while the evidence here shows that the property involved is vacant real estate zoned for industrial uses. Under the view we take of this appeal, we need not consider or decide these points or the various refinements thereof raised by both sides.

■■ It is presently the law of Illinois that ordinances of the type involved here, which require the licensing of real estate brokers by the municipality, have primary reference to brokers whose place of business is within the city or village in question and such ordinances may not be applied to prevent recovery of commission by a broker doing busi-

ness in another municipality, as a result of one isolated transaction within the boundaries of the licensing authority. This view was set forth by this court in *Moehling v. Brickman,* 98 Ill.App.2d 156, 164-165, 240 N.E.2d 210, (leave to appeal denied by Supreme Court of Illinois, January, 1969). This is the valid and applicable principle of law which governs the rights of the parties in the case at bar.

In *Moehling,* this court cited and relied upon *First Nat. Bank of Millstadt v. Freant,* 7 Ill.App.2d 204, 129 N.E.2d 276. That case involved an ordinance of Belleville which provided for the licensing of every broker carrying on business therein. Failure to do so was made a misdemeanor subject to a fine. The gist of the decision appears from the following language (7 Ill.App.2d at 208):

> "From the foregoing, we are of the opinion that ordinances for broker licenses apply to the occupation where it is carried on, rather than where the property is situated, with the possible exception of a series of transactions in one locality."

The court went on to note "* * * that an ordinance prescribing a penalty by fine, does not usually invalidate a contract. The modern trend of authority appears to limit the penalty under any act to that prescribed by the act itself." (7 Ill.App.2d at 208.) The court also considered the earlier Illinois case of *Douthart v. Congdon* (1902), 197 Ill. 349, which is cited and relied upon by defendant here. In that case, the supreme court held illegal promissory notes issued to a grain broker for payment of commissions where the broker had failed to obtain a license from the City of Chicago. The court pointed out that this decision, together with other earlier Illinois cases, was based upon the transaction of business within the City of Chicago as distinguished from cases based upon the location of the property. The court pointed out that, in the latter type of cases, contracts for brokerage commission were enforceable by an unlicensed broker.

The remaining decisions cited by defendant do not help his situation. In *Frankel v. Allied Mills, Inc.,* 369 Ill. 578, 17 N.E.2d 570, the supreme court denied recovery by a broker licensed in Illinois for sale of a piece of property located in that state to a client in New York City. The contract for the commission was completely made in New York where the broker was not licensed. New York State had a statute forbidding any person from acting, even temporarily, as a real estate broker without a license. The statute forbade any unlicensed person from bringing an action to recover commission for services rendered as a broker. The court held that since the contract was not valid under the law of New York, it would not be enforced in Illinois.

*Simpson v. Adkins,* 386 Ill. 64, 53 N.E.2d 979, involved an action to acquire title to certain real estate in connection with rights to oil and gas. One of the questions decided was the right of lessors and of a highway commissioner to grant the lessee authority to maintain equipment upon a public highway for use in connection with the oil wells. The court held that such agreement was illegal and unenforceable in view of provisions of the Criminal Code and of other statutes forbidding obstructions or encroachments upon the public highway.

*Freer v. Orr Realty,* 336 Ill.App. 310, 83 N.E.2d 361, was concerned with a Chicago ordinance which applied to brokers but which also contained a provision purporting to prevent recovery of commissions by an unlicensed broker. The trial court acted properly in rejecting the defense based upon alleged violation of ordinances by plaintiff.

As regards the factual issue which remains, the evidence shows that defendant and his wife owned a parcel of vacant land close to an industrial park within the village. On April 15, 1968, defendant listed the property with plaintiff for sale, by means of a written exclusive sales contract. This provided for a price of 65¢ per square foot to be reviewed after six months unless the property was previously sold. Provision was included for payment of commission to the broker.

Thereafter, in November, 1968, the parties reviewed the situation. The evidence in plaintiff's behalf is that they verbally agreed upon increasing the price to 75¢ per square foot. Defendant's testimony is that they agreed upon 90¢ per square foot. In February of 1969, a prospective buyer, contacted by plaintiff's agent, agreed to buy the property for 75¢ per square foot. This contract was tendered to defendant who rejected it. Testimony in behalf of plaintiff is that the contract was rejected only because it provided for payment of the purchase price in installments. Defendant testified that he rejected the contract for that reason and also because the price was inadequate.

In March of 1969, a contract was again submitted to defendant by the same buyer including a cash offer of 75¢ per square foot. Here again, the evidence conflicts. Testimony in plaintiff's behalf is that defendant gave verbal consent to the contract subject only to review by his attorney. Defendant testified that he merely said he would think about the matter. The prospective buyer then requested permission from plaintiff's agent to make soil tests upon the property. A letter was written by the agent to the buyer stating that he was authorized to make such tests; the agent had met with defendant who had approved the contract and granted permission to make the tests and the contract would be reviewed and executed upon return of defendant's attorney. The letter

shows that carbon copies thereof were directed to defendant and to his attorney and there was testimony to that effect. However, defendant testified that he did not recall receiving a copy of the letter.

Thereafter, plaintiff's agent, Gerstenfeld, was told by the attorney that the contract would not be accepted. Defendant told him that the property was worth more than the contract or $1 a square foot. About this time, Gerstenfeld was hospitalized and another representative of plaintiff, its president, Kenneth Tucker, spoke to defendant. Defendant again stated that he would not proceed with the contract. Tucker, who had not previously had personal contact with the matter, wrote defendant a letter. He stated that plaintiff had obtained the purchaser in accordance with the terms of the contract. The letter also stated, incorrectly, that there had not, in fact, been any review of the selling price as provided in the original contract. The letter further stated that a contract for sale of the property was enclosed at the price in question and that plaintiff was holding an earnest money deposit of $5000. The letter further stated that the purchaser was ready, willing and able to proceed so that the broker's commission had been earned.

■■ Both sides have given us elaborate and extensive arguments as to the merits of the situation including repeated references to the error contained in the letter from Tucker to defendant. In cases such as the one at bar involving attempted recovery of commissions by real estate brokers, the determination of whether the broker was actually the procuring cause of the sale or whether he procured a purchaser ready, willing and able to purchase the property upon the specified terms and conditions, are issues of fact. (*Cohen v. McKey & Poague, Inc.*, 1 Ill.App.3d 596, 274 N.E.2d 684.) Here, the evidence is sharply conflicting and presents questions of credibility for resolution by the trier of fact. In such a situation, the rule established beyond argument is that we may not substitute our opinion for that of the trial court and the findings arrived at by the court, which saw and heard the witnesses, can be set aside only where the result is manifestly against the weight of the evidence. *Reese v. Melahn*, 53 Ill.2d 508, 512, 513, 292 N.E.2d 375. See also *W. F. Smith & Co. v. Lowenstein*, 4 Ill.App.3d 153, 158, 280 N.E.2d 547.

The judgment here is amply supported by the evidence.

Judgment affirmed.

BURKE, P. J., and EGAN, J., concur.