Merrimack
No. 6677

F. A. Larson Realty Co., Inc.

v.

Robert C. Hayes

July 30, 1974

*Jarlath M. Slattery,* by brief and orally, for the plaintiff.

*Orr & Reno* and *William L. Chapman (Mr. Chapman* orally) for the defendant.

Grimes, J. This action for a broker's commission raises the issue of whether or not a broker substantially complied with

his contract to find a buyer for real estate on the seller's terms. After defendant refused to sell to broker's proposed buyer, broker sued in assumpsit for a $2,000 real estate commission. A hearing before a Master (*Frank B. Clancy,* Esq.) resulted in a report recommending a verdict for the plaintiff. The Trial Court (*Keller,* C.J.) approved the report, ordered the recommended verdict, and reserved and transferred the sole issue of whether or not plaintiff substantially performed on his broker's contract.

Plaintiff, a duly licensed real estate broker, in February 1968 undertook to sell defendant's land and house located in Newbury, New Hampshire. Defendant, a physician living in Rhode Island, indicated by letter dated February 7, 1968, that he wanted to sell the house with half of the land for $25,000 plus the cost of broker's commission. By a second undated letter defendant instructed plaintiff to have the property surveyed and divided in half. Plaintiff said defendant personally walked the property with him to show what part was to be sold and what part retained. Defendant denied being in New Hampshire at the time. The survey was performed under plaintiff's direction in September 1968 and revealed that defendant actually owned 89 acres rather than the 96 acres recited in his deed. The 89 acres were divided into two parcels, one of 50 acres which included the house and one of 39 acres which was to be retained by defendant. After showing the property to numerous persons, plaintiff received a $500 deposit on the property by check dated September 6, 1968. The selling price was $27,000 which included $2,000 to cover plaintiff's commission.

Plaintiff testified that he then notified defendant of the proposed sale and helped to arrange financing for the buyers by setting up a $17,000 mortgage with a local bank. Plaintiff further testified that he arranged a closing for late September, but defendant called him a few days prior to the scheduled date to have the closing postponed on account of his wife being ill. Shortly thereafter, defendant's brother, an attorney practicing in Connecticut, informed plaintiff by telephone that defendant's wife had died and that the closing would have to be postponed another three weeks. Sometime within the three-week period, defendant's brother telephoned plain-

tiff a second time. He told plaintiff that defendant had changed his mind and now did not want to sell the property at all. He also asked defendant how much he "would take to settle the case."

Defendant's wife was sick thoughout the summer of 1968 and died of cancer on October 5 of that year. Defendant denied that plaintiff ever told him he had a customer willing to buy the portion of property he (defendant) wanted to sell and he denied any closing date was ever agreed upon. He also said he did not see the survey and proposed division of the property until January 1969. From all the testimony, the master, in accordance with the general rule entitling a broker to his commission, found that plaintiff produced a buyer "ready, willing and able to purchase the Hayes property upon defendant's terms . . . ." In transferring defendant's exceptions, the trial court noted that implicit in the master's conclusion was the finding that plaintiff had substantially performed its agreement with defendant. *Philbrick v. Chase*, 95 N.H. 82, 58 A.2d 317 (1948); Annot., 3 A.L.R.2d 526 (1949); Annot., 18 A.L.R.2d 376 (1951).

Defendant contends that the master's finding of substantial performance is erroneous as a matter of law in that plaintiff did not carry out the instruction that the property be divided in half. The plaintiff testified that defendant himself had pointed out the area which he wanted sold and that the proposed division was in accordance with these instructions. He also testified that the defendant assented to the sale and to the proposed division. Plaintiff further testified that, after he found a buyer, he telephoned defendant several times to arrange the closing and that, after the defendant "accepted the offer", he sent plaintiff his copy of the deed in order that a new deed be prepared. The surveyor testified that his division of the property was accurate within plus or minus 4 acres. Taking into account local property values, the master could find that the proposed division substantially complied with the instructions to halve the property.

The testimony in this case was in very sharp conflict and presented issues of credibility for the trier of fact. "The credibility of the witnesses and the question as to what agreement regarding commissions was made were questions of fact

for the Trial Court (*Amodeo v. Allen,* 94 N.H. 370) and since the findings could reasonably be made on all the evidence they must stand." *Gingras v. Stark Estates,* 109 N.H. 242, 244, 248 A.2d 86, 88 (1968); *Guy v. Hanley,* 111 N.H. 73, 276 A.2d 1 (1971); *Kenroy, Inc. v. Berthold,* 11 Ill. App. 3d 1039, 298 N.E.2d 387 (1973). If there is any evidence from which reasonable persons could reach the verdict, it must be upheld. *Hines v. Donovan,* 101 N.H. 239, 139 A.2d 844 (1958); *Gingras v. Stark Estates, Inc. supra; Bell v. Warren Development Corp.,* 114 N.H. 267, 319 A.2d 299 (1974); *Dindo v. Denton,* 130 Vt. 98, 287 A.2d 546 (1972). We believe there was such evidence in this case.

*Exceptions overruled.*

All concurred.