THE PEOPLE ex rel. WILLIAM C. DIZNEY et al., Plaintiffs-Appellees, v. FRANK WITT et al., Defendants-Appellants.

(No. 73-5;

Second District—March 6, 1975.

Anthony R. Fabiano and Sam J. Cannariato, both of Rockford, for appellants.

Berry, Simmons & Thorsen, of Rockford, for appellees.

Mr. PRESIDING JUSTICE THOMAS J. MORAN delivered the opinion of the court:

On October 11, 1972, William and Desmion Dizney, plaintiffs, filed a petition for a writ of habeas corpus seeking return of their two daughters, ages 13 and 12, from Frank and Janet Witt, defendants. On October 18, defendants filed petitions in the juvenile division of the court alleging the girls to be neglected and requesting that they be made wards of the court. Upon denial of a motion to dismiss plaintiffs' petition, defendants made their return stating that it would be in the best interest of the minors to remain with the defendants. Defendants then moved to continue any hearing on plaintiffs' petition, pending a decision on the juvenile matters. This motion was denied. At the conclusion of the hearing, the court ordered immediate custody of the children awarded to plaintiffs and denied defendants' motion to stay enforcement of the order. The judge then informed the parties that the petitions pending in juvenile division had been assigned to him for disposition. Defendants orally moved for a change of venue which was denied and, upon plaintiff's motion, the petitions concerning neglect of the minors were dismissed.

In reaching its order of custody, the trial court noted that, while both plaintiffs and defendants were fit parties to have custody, the defen-

dants had offered no evidence to establish any legal claim to the children; that the natural parents had a superior right to custody; and that it was in the best interest of the children that their immediate custody be awarded to plaintiffs.

On appeal, defendants contend that it was against the manifest weight of the evidence for the trial court to find that the best interests of the children would be served by placing them in the custody of plaintiffs; that the trial court erred by denying a stay of execution of its order, in not granting defendants' oral motion for change of venue, and by summarily denying the petitions to have the girls declared wards of the court.

The facts are generally undisputed. Plaintiffs and defendants met and were neighbors in Samoa during 1968. The families became friendly and the Dizney girls spent much of their time in the defendants' home. Ms. Dizney, a physician, wanted to practice medicine in the United States and to accomplish this desire it would be necessary that she serve a one-year internship in this country. In 1970, when the defendants returned to the United States, they offered to have Ms. Dizney and her daughters stay with them in their home in Rockford in order that Ms. Dizney could begin her internship. (Mr. Dizney was to stay in Samoa to complete his teaching contract.) During the late summer of 1970, Ms. Dizney and the girls moved into the defendants' home, an understanding having been reached that plaintiffs would pay $200 per month for the children's accommodations.

In January of 1971, Ms. Dizney moved to an apartment across from the hospital in order to accommodate her schedule of studying for the Board Examination until early morning hours and being at the hospital by 7 A.M.. The girls stayed with the defendants; their mother visited them on weekends, but seldom during the week. Ms. Dizney testified that her relationship with the girls was good during this period. The girls spent the summer of 1971 vacationing with the defendants in Maine.

After completing her internship, and while the girls were in school, Ms. Dizney visited her husband in Samoa for two months, during which time she wrote the girls often but seldom heard from them. In April, 1972, en route returning to Rockford where she intended to seek employment, Ms. Dizney stopped in Dallas, Texas, to visit her sister. While there, she received a telegram from the defendants stating that her presence was harmful to the girls and that she was to "stay away." After consultation with her husband and a clinical psychologist, it was decided it would be best that Ms. Dizney not return to Rockford immediately. Against their desires, the plaintiffs agreed with defendants to allow the

girls a "transition period" during which they would remain with the defendants to complete the 1972-73 school year. The girls were to spend vacations with their parents.

In June of 1972, the defendants took the girls overseas with them. After their return, Ms. Dizney phoned her daughters in Rockford and while she talked with one of the girls, Ms. Witt took the phone and said, "Can't you see what you are doing to them; can't you leave them alone?" On the evening of October 7, 1972, one of the girls telephoned, asking for "Bill Dizney," and when Ms. Dizney said he was not at home, the girl stated, "You can't help us, we don't want to live with you, we hate you." Ms. Dizney testified that she heard Mr. Witt laugh in the background. The petition for writ of habeas corpus was filed four days later.

Mr. Dizney testified that his relationship with the girls was very good up to the time that Ms. Dizney and the girls left Samoa; that he subsequently wrote them and came to the United States twice during 1971 to visit his family; that the family vacationed together during one of his visits and at that time the girls treated him politely but distantly. During his second trip, Mr. Dizney did not attempt to see or call the girls because he had received letters from Ms. Witt saying that his letters disturbed the girls a great deal and he believed this reasonable while the family was living apart. After being notified of the telegram which Ms. Dizney received in Dallas, Mr. Dizney immediately resigned as Dean of Instructions at the College of American Samoa and joined his wife.

At the time of trial, the Dizneys were living in a two-bedroom house with a private garden in Dallas. Ms. Dizney was employed as a physician and surgeon in the Health Medical Services in Dallas at an annual salary of $20,000 and Mr. Dizney, who has several teaching degrees, was seeking employment in Dallas in the field of education.

Ms. Witt holds a master's degree, had taught in Samoa and, at the time of trial, was teaching in Rockford. Mr. Witt also holds a graduate degree, taught school for 19 years (all in Rockford except for the two years in Samoa) and, at the time, was chairman of the English Department at a Rockford middle school.

Both plaintiffs and defendants introduced third-party testimony attesting to the happiness and well-being of the girls while in their custody.

The two girls testified, both stating that they liked their parents but wanted to live with the defendants because they enjoy their friends and the school they attend, and that the defendants have treated them as members of the family.

As to defendants first contention, it is a well-settled rule of law that

while natural parents have a superior right to the custody of their children, this right is not absolute and must yield to the best interest of the children. (*People ex rel. Edwards v. Livingston*, 42 Ill.2d 201, 209 (1969); *Giacopelli v. Florence Crittenton Home*, 16 Ill.2d 556, 565 (1959); *Osman v. Osman*, 130 Ill.App.2d 830, 834 (1970).) Defendants recognize the superior right of the natural parents but argue that, in this case, the court's ruling was not in the best interest of the children and was therefore against the manifest weight of the evidence. As best we can discern the argument, defendants claim that the order should have taken effect after the 1972-73 school year and that its immediate enforcement had a "scarring psychological effect" upon the children.

■■ For a judgment to be against the manifest weight of the evidence, it is not enough to show that there is sufficient evidence to support a contrary judgment. The evidence on behalf of the appellant must be so strong and convincing as to completely overcome the evidence and presumptions, if any, existing in favor of the appellee. (*People ex rel. Lauth v. Wilmington Coal Co.*, 402 Ill. 161, 167 (1949); *Broncata v. Timbercrest Estates, Inc.*, 100 Ill.App.2d 49, 54-55 (1968).) In the case at bar, the trial court found that during the separation occasioned by the temporary demands of plaintiffs' professions, defendants had allowed or contributed to an alienation of the children's affection for their parents; that extending the separation would foster the alienation, and that it was in the best interests of the children for the change of custody to be immediate. Our review of the evidence indicates that the trial court was correct and its decision not against the manifest weight of the evidence.

■■ Defendants moved for and were denied a stay of the trial court's order. They now claim this was error. The granting or denying of a motion to stay is to be exercised in the discretion of the court. As already noted, the trial court was of the opinion that a continued separation of the minors from their parents would not be in their best interest. Subsequent to the trial court's denial, defendants moved this court to grant a stay of the order and, after due consideration, we denied the motion. We adhere to that decision and find the trial court was not in error under the circumstances of this case.

After conclusion of the hearing on the petition for writ of habeas corpus and a final determination thereon, the trial judge informed the parties that the petitions pending in the juvenile division had been assigned to him for disposition. Thereupon, defendants moved for a change of venue; this was denied. Upon plaintiffs' motion, the trial court dismissed the petitions without an evidentiary hearing and defendants here claim that the trial court erred in its action.

50

██ Under different circumstances we might find merit to defendants contention but in this instance we find that the trial court was correct in its action. The petitions filed in the juvenile division sought to have the two minor children declared wards of the court because they were neglected. After setting forth the various locations around the world in which the children had lived, the petitions stated that the parents were now intending to remove them to Dallas, interrupting their schooling and disrupting their normal development, all of which would be injurious to their welfare. The trial court found that the issues within the petitions were identical to those raised during the hearing on the writ of habeas corpus, concluded that those issues had already been determined and that the parties were not entitled to a second hearing. We agree that no purpose would be served by a second hearing, containing the same evidence on the same issues, but under a new format, and conclude that the trial court properly denied the change of venue and dismissed the petitions filed in the juvenile division.

Judgment affirmed.

GUILD and RECHENMACHER, JJ., concur.