HENRY WROCLAWSKI, Plaintiff-Appellant, *v.* STANLEY WASZCZYK, Defendant-Appellee.

First District (4th Division) No. 61252

Opinion filed January 14, 1976.

Walter Jaroszewski, of Chicago, for appellant.

Elliot Heidelberger, of Chicago, for appellee.

Mr. JUSTICE BURMAN delivered the opinion of the court:

The plaintiff, Henry Wroclawski, filed a verified complaint against the defendant, Stanley Waszczyk, in which he alleged that he loaned the defendant the sum of $800 on or about February 23, 1972, which sum the defendant promised to repay, along with an interest rate of ten percent per annum, within thirty days. He further alleged that despite his numerous demands for payment as well as the defendant's repeated promises to repay, the defendant failed and refused to pay the amount in controversy. On June 15, 1973, the defendant filed an appearance through his attorney and the cause proceeded to a bench trial where a judgment was entered for the defendant, with costs assessed against the plaintiff.

On appeal, the plaintiff contends that (1) the defendant waived the right to assert an affirmative defense at trial since he failed to file responsive pleadings, (2) the trial court's judgment affected the rights and obligations of a third person who is not a party nor in privity with a party in this suit, and (3) the judgment rendered is inconsistent to the findings of the court.

A review of the record reveals that on February 5, 1972, the defendant was married. Upon termination of the ceremony, which was ushered by both the plaintiff and his brother, Edward, the defendant asked Edward to pick up his car which was being repaired. While Edward drove the defendant's car it was damaged as a result of an automobile accident. At the trial conflicting accounts of what occurred subsequent to the accident were presented. The defendant, initially called as an adverse witness pursuant to section 60 of the Civil Practice Act (Ill. Rev. Stat. 1973, ch. 110, par. 60) acknowledged that he received $800 from the plaintiff, whom he had known for fifteen years, but denied promising to repay this amount. Moreover, he could not recall whether the plaintiff requested repayment of the $800 even though he did receive a letter from the plaintiff's attorney demanding payment. Besides admitting that the plaintiff did not damage his car, he further testified, on clarification examination

by his own counsel, that he had a meeting with the plaintiff and his brother, Edward, on February 21 or 22, 1972, at the Wroclawski home in which Edward stated he was going to borrow $800 from the plaintiff to repay the defendant. After Edward made this statement, the defendant expounded that the plaintiff told him to meet him after school on the following day. He also indicated on recross by the plaintiff's counsel that he had filed a suit against Edward seeking payment of $800 for damage to his car and that the suit was still pending.

The plaintiff was next to take the stand and testified on direct examination that the defendant initially asked him for a loan to cover the automobile repairs in a telephone conversation two weeks subsequent to the defendant's wedding. During this conversation, which originally occurred between the defendant and Edward, the defendant not only asked for a loan of $800, but also stated that he would give the plaintiff ten percent interest on such principal and that such amount would be repaid within one month. He further testified that the money was not repaid within the agreed time period and that the defendant responded to his three subsequent requests for payment with excuses ranging from his failure to receive his Veterans' Administration check to his wife just giving birth to a child. On cross-examination, the plaintiff also indicated that the defendant never informed him that his brother said that he (the plaintiff) would render payment for him nor did his brother ever ask him to render payment.

Counsel for the plaintiff next called the plaintiff's brother, Edward, who testified on direct examination that he never mentioned to the defendant that his brother was going to pay for the damages to the car. Moreover, he denied ever asking his brother nor did he himself agree to pay for the damage which he allegedly caused. He further testified on cross-examination that the defendant never informed him that he was responsible for the damages to the automobile nor did the defendant make a request for recompensation to him.

After counsel for the plaintiff rested, the defendant was recalled as a witness and indicated on direct examination that he had no recollection of any conversation with the plaintiff wherein he gave excuses for not paying the money. He also denied that he ever promised to repay the money or the ten percent interest thereon or that he would pay the plaintiff back within thirty days. Concerning the meeting at the Wroclawski home on February 21, 1972, he testified that when he met with the two brothers, Edward asked the plaintiff to lend him the money to fix the defendant's car. The plaintiff then informed the defendant that he would pick him up, take him to the bank, and give him the money. The

defendant renewed his assertion that he never promised to repay the plaintiff for the money. Moreover, it was his belief that the plaintiff tendered this amount on behalf of his brother for the damage that Edward allegedly caused to the automobile. Yet, when questioned on cross-examination as to the reason he filed a suit against Edward when the plaintiff tendered the money in his behalf, the defendant answered that such action was brought on the advice of his counsel.

Upon hearing the evidence presented by both sides, as well as noting that he was inclined to believe that the plaintiff made a loan to the defendant, the trial judge stated:

> "[I]t cannot escape my mind that plaintiff's brother damaged this man's car and it seems to me that if plaintiff wanted to collect from anybody for the money, even though I'll assume that the loan was legitimate, I think the man that he should collect from would be his own brother * * * I cannot understand, also, why a suit was filed against Edward but, be it as it may, it would seem to me that plaintiff ought to collect from his brother and I'll find for defendant on condition that the other suit is dismissed against Edward."

The plaintiff filed a post-trial motion to set aside and vacate the judgment, but such motion was denied on July 30, 1974.

■■ We first consider whether the defendant's failure to file an answer to the plaintiff's complaint constituted a waiver of the right to assert an affirmative defense at trial, namely, that the plaintiff undertook an obligation for his brother. While it has been held that an affirmative defense must be raised in the pleadings, and a defense not properly pleaded is deemed waived even though it may appear to be within the evidence (*Alco Standard Corp. v. F & B Manufacturing Co.*, 132 Ill.App.2d 24, 28, 265 N.E.2d 507, 510, *aff'd in part, rev'd in part on other grounds*, 51 Ill. 2d 186, 281 N.E.2d 652; *Economy Truck Sales & Service, Inc. v. Granger*, 61 Ill.App.2d 111, 116, 209 N.E.2d 1, 4), it must be remembered that the goals of the rules governing small claims actions are to provide an expeditious (*Steelworkers Local 5292 v. Bailey*, 29 Ill.App.3d 392, 393 N.E.2d 867, 868) as well as a simplified and inexpensive procedure for handling small claims (*Maxcy v. Frontier Ford, Inc.*, 29 Ill.App.3d 867, 872, 331 N.E.2d 858, 862; *Griffin v. Billberry*, 1 Ill.App.3d 219, 221, 273 N.E.2d 693, 695) and are complete in themselves without reference to other rules except as to form of summons. (*Griffin v. Billberry*, Historical and Practice Notes, Ill. Ann. Stat. ch. 110A, § 281, at 321 (Smith-Hurd 1968).) Since the amount in controversy in this civil contract action did not exceed $1000, exclusive of interest and costs, the instant case did

come within the course of a small claims action (Ill. Rev. Stat. 1973, ch. 110A, par. 281 *et seq.*) and was therefore subject to Supreme Court Rule 286 which provides in relevant part:

> "If the defendant appears, he need not file an answer unless ordered to do so by the court; and when no answer is ordered the allegations of the complaint will be considered denied and any defense may be proved as if it were specifically pleaded." (Ill. Rev. Stat. 1973, ch. 110A, par. 286.)

As the record evinces, the defendant did file an appearance through his attorney and the trial court did not order him to file an answer to the complaint. Thus, the defendant was not obligated to do so and, pursuant to Supreme Court Rule 286, it was not error for him to assert and the trial court to consider an affirmative defense even though it was not specifically pled.

■■ Concerning the plaintiff's latter two contentions, he posits that the trial court's judgment prejudiced him in that (1) it absolved the defendant from repaying the alleged loan to the plaintiff while simultaneously holding the plaintiff responsible for property damage that was incurred without any fault on his part and (2) that it was inconsistent with the court's finding that the plaintiff made a loan to the defendant. While the plaintiff proffers judicial tenets in support of each respective contention, we believe that resolution of these two assertions is to be considered in light of the well settled edict that where the testimony in a trial without a jury is conflicting, the weight to be given that testimony is a matter for the trial court, and its findings will not be disturbed on review unless such determinations are palpably contrary to the manifest weight of the evidence. (*E.g., First National Bank v. Village of Morton Grove*, 12 Ill.App.3d 589, 594, 299 N.E.2d 570, 574; *Kenroy, Inc. v. Berthold*, 11 Ill.App.3d 1039, 1044, 298 N.E.2d 387, 390.) Moreover, for a judgment to be against the manifest weight of the evidence, the appellant must present evidence that is so strong and convincing so as to completely overcome the evidence and presumptions, if any, existing in the appellee's favor. *People ex rel. Dizney v. Witt*, 26 Ill.App.3d 45, 49, 324 N.E.2d 433, 436; see *Neuner v. Schilling Petroleum Co. Inc.*, 26 Ill.App.3d 148, 151, 325 N.E.2d 34, 37; *Hill Behan Lumber Co. v. Marchese*, 1 Ill.App.3d 789, 791, 275 N.E.2d 451, 452.

■■ Applying these judicial precepts to the case at bar, we are of the opinion that the trial court's judgment was against the manifest weight of the evidence in that the record clearly establishes that the amount received by the defendant was a legitimate loan. In the first place, the defendant received $800 from the plaintiff who was not in any manner involved in the use of nor damage to his automobile. Secondly, the rec-

ord is devoid of any evidence that substantiates the rationale proferred by the trial court in support of its judgment, namely, that the plaintiff ought to collect from his brother, who was using the car when it was damaged. Although the defendant maintained that there was an obligation on the plaintiff to pay for the damage caused by his brother, there was not any indicia of evidence elicited from the testimony of the witnesses at trial that the plaintiff and his brother were in privity of contract or had engaged in an agency agreement regarding contractual or tortious matters. Rather, both the plaintiff and his brother testified that Edward never asked the plaintiff to pay the $800 for him.

Finally, the defendant's own conduct in filing a complaint for damages against the plaintiff's brother, which is still pending, not only refutes his position that the plaintiff had an obligation to pay for the damages to the car, but also serves as corroborative evidence that the plaintiff could not have agreed to pay the damages with the money he gave the defendant because if there was such an obligation or agreement, there would be no justification to commence this separate action. In view of such evidence, we therefore believe that the defendant borrowed the money and is liable to the plaintiff for the sum of $800 plus, commencing February 23, 1972, interest of ten percent per annum which, as the plaintiff testified, the defendant agreed to pay.

Accordingly, the judgment of the circuit court is reversed and the cause is remanded to enter judgment in favor of the plaintiff and against the defendant for the sum of $800 plus interest as previously stated.

Reversed and remanded with directions.

JOHNSON, P. J., and DIERINGER, J., concur.